## IRVIN REED v. THE STATE.

62  405|
83  486|

1. CRIMINAL LAW. *Insanity. Non-expert witness. Evidence.*

   It is competent for a non-expert witness in a criminal case, who has had oppor-
   tunities of observing the conversation, conduct, and manners of the defend-
   ant, to state his opinion or belief as to the sanity or insanity of the
   accused in connection with the facts upon which it is based. *Wood* v. *State,*
   58 Miss. 741, cited.

2. SAME. *Insanity. Expert witness. Competency.*

   The fact that a witness is a graduate in medicine and a practicing physician
   does not render him competent to give his opinion as an expert upon the evi-
   dence adduced in a criminal case as to the sanity or insanity of the defend-
   ant, where it does not appear that such witness is conversant with insanity in
   any of its forms, or has ever had the care or superintendence of insane per-
   sons, or ever made the subject of mental disease a study. *Russell* v. *State,* 53
   Miss. 367, cited.

3. SAME. *Insanity. Examination of expert. Form of question.*

   To ask a medical expert witness in a criminal case, "What is your opinion,
   based upon the testimony adduced at this trial, as to the sanity or insanity of
   the defendant at or before the time of the alleged shooting?" is objectionable
   when the truth of such testimony is not admitted, as the question then in-
   volves the determination of the truth of that testimony.

4. SAME. *Assault. Invasion of marital rights. Evidence.*

   It is no defense to an indictment for assault with intent to kill and murder, that
   the defendant learned on the night before the day of the assault that the man
   assaulted had been on that night and previously criminally intimate with
   defendant's wife or had solicited sexual intercourse with her; and evidence
   of such information or of the facts to which it related is inadmissible.

APPEAL from the Circuit Court of Clarke County.

HON. S. H. TERRAL, Judge.

Irvin Reed was indicted for an assault upon H. Clay Davenport
with intent to kill and murder him. At the trial it was proven
that the defendant approached Davenport while engaged at his
work, and without making any remark shot him with a rifle, the
ball taking effect in his shoulder.

C. C. Ferrill, a witness for the defendant, who was admitted to
be "a very intelligent man," testified as follows: "I have known
the defendant for the last five or six years, and am well acquainted
with him; he was my barber; saw him almost every day until

since his arrest. He kept a barber's shop just above and on the opposite side of the street from my store. He did my shaving until a few days before he shot Davenport, when I discovered there was something wrong with him. He was nervous and restless and looked wild and talked frequently abstractedly. He had a wild look out of his eyes." The defendant's counsel then asked the witness, "What is your opinion as to the sanity or insanity of the defendant at the time of the shooting of Clay Davenport?" The question was objected to by the district attorney, and the court refused to permit the witness to answer it. Other witnesses testified to similar facts and were asked the same question, which, upon objection, the court refused to permit them to answer.

A question propounded by the defendant's counsel to E. L. Sharman as a medical expert, and excluded by the court, and also the evidence touching his qualifications as a witness in that capacity, are stated in the opinion of the court. The defendant offered to prove by several witnesses that previously to the shooting Davenport had been guilty of criminal intercourse with defendant's wife, or had attempted to induce her to commit adultery with him, and that defendant had been informed of such attempts, and especially of an attempt made on the night before the day of the assault. The court, upon objections to the questions, would not permit the witnesses to answer them.

The defendant was convicted and sentenced to imprisonment in the penitentiary for two years. Thereupon he appealed to this court.

_Wood & McIntosh_, for the appellant.

This case must be reversed, unless the case of _Wood v. The State_, 58 Miss. 741, is overruled, for in the case at bar the counsel for the appellant brought themselves clearly within the rule laid down in the Wood case upon the trial in the court below. C. C. Ferrill and other witnesses for the defendant, who were his neighbors and friends, should have been permitted to give their opinions as to the sanity of the defendant after the foundation had been laid for such opinions.

We introduced a physician, Dr. Sharman, who had heard all the

testimony of the other witnesses, and asked his opinion as an ex-
pert upon the hypothetical state of facts, etc., which was also
refused by the court, wherefore we *assert* again that if the rule
asserted by this court in the Wood case is adhered to, then this case
must be reversed.   We do not believe the Wood case will be over-
ruled, because the principle there announced is not only in line
with the current of decisions, as shown in Mr. Wharton on Evi-
dence and Lawson on Insanity, but the principle is sustained by
reason *and is right.*

The proof shows that the man Davenport had been guilty of
improper conduct toward the wife of the defendant.   He had been
warned by the defendant to keep away from his house.   It shows
that the defendant was cognizant of the conduct of Davenport.
He knew that Davenport was persistent in attempting to befoul
his marriage bed, to dishonor his wife, and to bring shame and
disgrace upon his family.   These facts were preying upon his mind.
They were well calculated to dethrone his reason and make him a
madman, and the forfeiture on the part of Davenport should have
been his wicked life.

In the case of *Sawyer* v. *The State*, 35 Ind. 80, the court held
that a knowledge of the infidelity of the defendant's wife was a
*cause* that might produce temporary insanity, just like the fact that
the mother, twin brother, cousin, etc., of the defendant were all
insane shows that insanity is hereditary in the family.   These facts
show a *cause* for insanity, but it was incompetent to show a *cause*
without also showing the effect or evidences of insanity itself.

In other words, simply to show that a defendant had a cause for
insanity, without showing that such cause did actually produce in-
sanity wholly fails to establish *insanity*, and simply to show a
cause and nothing more proves nothing.   In this case we did pro-
duce abundant proof, tending to show—in fact, showing—that the
defendant was insane at the time and before and after the shooting;
it was, therefore, clearly admissible to have shown to the jury a
*cause.*

*J. L. Harris*, for the State.

That non-experts may give their opinions when accompanied by

a statement of the facts on which they are based, seems to be well settled in cases of alleged senile dementia, mental imbecility, or other chronic mental disorders, and an examination of the authorities cited by the text-books shows that it is in this class of cases chiefly that such opinions have been received.   1 Wharton's Law of Evidence, § 451.

In *Wood's Case*, 58 Miss. 471, after stating the general rule the court said : " The correctness of such a rule is even more apparent in cases of alleged idiocy and mental imbecility than in cases of insanity or violent forms of madness."

There are authorities which wholly repudiate the rule in all cases, but evidently there is a distinction in the class of cases mentioned above.   There is much reason for the reception of the opinions of friends and attendants who have long observed a patient suffering from a chronic mental disorder, and such opinions are justly entitled to great weight; but what can be said of an opinion based upon oddities and eccentricities which may and do spring every day from business misfortunes or domestic afflictions? How ready an unprofessional person is to attribute singular conduct and expressions to insanity, especially in cases of persons who have previously led a regular and sedate life, and to what danger verdicts in criminal cases would be exposed if these opinions should be received will at once occur to the court.

ARNOLD, J., delivered the opinion of the court.

A non-expert witness who has had opportunities of knowing and observing the conversation, conduct, and manners of a person whose sanity is in question, may depose, not only to particular facts, but to his opinion or belief, formed from such actual observation, as to the sanity or insanity of such person. *Wood* v. *State*, 58 Miss. 741; 2 Taylor on Ev., § 1416; 1 Greenl. Ev. (14th ed.), § 440, note a; 1 Whart. Ev., § 451.   After the statements made by the non-expert witnesses in this case as to their acquaintance with the appellant and their opportunities for observing his conduct and condition, it was error to exclude their opinions from the jury, based on these facts, as to his sanity or insanity.   Of course,

the opinion of each such witness should have been drawn from facts known and stated by him, and not from the testimony of other witnesses.

It was not competent for the physician introduced as an expert, who knew nothing of the appellant, but was present and heard all the evidence at the trial, to express his opinion on the question propounded to him as to the sanity or insanity of the appellant, for the reason, that it was not shown that the witness was an expert on that subject. *Russell* v. *State,* 53 Miss. 367 ; 3 Greenl. Ev., § 5. It appears from the record that he was a graduate in medicine and a practicing physician, but not that he was conversant with insanity in any of its various forms, or that he had ever had the care and superintendence of insane persons, or that he had ever made the subject of mental disease a study.

The form of the question propounded to this witness—" What is your opinion, based upon the testimony adduced at this trial, as to the sanity or insanity of the defendant, Irvin Reed, at or before the alleged shooting, on the 14th day of March, 1884 ?"— is objectionable because it involved the determination of the truth of the facts deposed to by the other witnesses, as well as the scientific conclusion to be drawn from those facts. Where the facts are admitted or not disputed, and the question thus becomes substantially one of science only, it may be convenient to allow the question to be put in that general form, though it cannot be insisted on as a matter of right. It is only the opinion of such witness on the facts, admitted or assumed, or which the jury may find to be proved in such case, that is admissible in evidence. 2 Taylor on Ev., § 1421; 3 Greenl. Ev., § 5; 1 Whart. Ev., § 452 ; *Commonwealth* v. *Rugens,* 7 Met. 500; *Woodbury* v. *Obear,* 7 Gray 467 ; *Page* v. *State,* 61 Ala. 16 ; *Dexter* v. *Hall,* 15 Wall. 9.

The general formula of the question suggested by the authorities to be propounded to such witness is, that " If the symptoms and indications testified to by other witnesses are proved, and if the jury are satisfied of the truth of them, whether, in his opinion, the party was insane, and what was the nature and character of that insanity—what state of mind did they indicate, and what would

he expect the conduct of such a person would be in any supposed circumstances?" 3 Greenl. Ev., § 5, and authorities *supra.*

If the witness states that the facts assumed indicate mental unsoundness, he may be inquired of in regard to the state and degree of mental unsoundness thus indicated, and how far it will disqualify the person from business or render him unconscious of the nature of his conduct. He should also be inquired of whether these facts are explainable in any other mode except upon the theory of insanity, and with what degree of certainty they indicate the inference drawn by the witness. 3 Greenl. Ev., § 5, note a; 1 Redfield, Law of Wills, 149, 150.

The court properly sustained the objection made by the district attorney to the testimony offered by the appellant in regard to the man upon whom the offense charged was alleged to have been committed, having, or making proposals to have, carnal intercourse with his wife on the night before the shooting occurred and previous to that night. Assault with intent to kill and murder, for which the appellant was being tried, does not admit of broader grounds of defense or wider range of testimony than the kindred crime of murder. If the appellant had been on trial for the latter offense, the evidence of illicit intercourse or attempted criminal intimacy with his wife could not have been properly admitted in the state of case exhibited by the record. If he had caught the offender in the act of adultery with his wife and had slain him on the spot, the crime would have been extenuated to manslaughter— such provocation in legal contemplation being sufficient to produce that *brevis furor* which for the moment unsettles reason. But if the adulterer had not been slain on the spot, but afterward, and when sufficient time had elapsed for passion to cool, the killing, instead of being manslaughter, would have been murder. 4 Bla. Com. 192; Whart. on Homicide, § 536; *State* v. *Samuel,* 3 Jones (Law) 74; *State* v. *Neville,* 6 Jones (Law) 432.

In *The State* v. *Neville, supra,* Judge Ruffin, with his usual clearness and force, said that the law as above stated "is found in the most ancient archives of the common law, and has been brought down to us in the same plain and precise terms by the

ablest judges and the most eminent writers on the common law, and a court at this day has no more authority to interpolate new qualifications or exceptions into it than to make a statute.    But the rule of the common law on this head stands not alone upon its own authority. /Homicide is extenuated to manslaughter, not by the fact that it was perpetrated in a fury of passion, but by such fury being excited by a present provocation./ But when a husband only hears of the adultery of his wife, no matter how well authenticated the information may be or how much credence he may give to the informer, and kills the wife or her paramour, he does it, not upon present provocation, but for a past wrong— a grievous one, indeed, but it is evident he kills for revenge.  Let it be considered how it would be if the law were otherwise.    How remote or recent must the offense be?—how long or how far may the husband pursue the offender?    If it happen that he be the deluded victim of an Iago, and, after all, that he has a chaste wife, how is it to be then?  These inquiries suggest the impossibility of acting on any rule but that of the common law without danger of imbruing men's hands in innocent blood, and the certainty of encouraging proud, heady men to slay others for vengeance instead of bringing them to trial and punishment by the law."

Exception was taken to the action of the court below in giving the instructions asked for the State, but no error is assigned here on that point, and under the rules of the court it will not be considered.    As the judgment must be reversed for reasons above stated, it is not necessary to notice other causes of error assigned.

*Reversed.*