## B. F. PREWITT v. STATE.

### [63 South. 330.]

1. CRIMINAL LAW. *Admission of evidence. Insanity. Appeal. Harmless error. Exclusion of evidence. Judicial notice. Heredity. Words and phrases. Hypothetical questions. Opinion evidence.*
   While in a prosecution for a criminal offense where accused pleaded insanity, it is proper to allow accused to show by a physician whether insanity was hereditary, after introducing evidence of the insanity of his blood relatives, this is not necessary as the court will take judicial notice of the fact that insanity is hereditary.

2. WORDS AND PHRASES. *Heredity.*
   "Heredity" is a universal law of organic life, being that biological law by which all living beings tend to repeat themselves in their descendants.

3. CRIMINAL LAW. *Appeal. Harmless error. Exclusive of evidence.*
   If it had been error, in a prosecution of a criminal offense in which accused pleaded insanity, to exclude evidence that insanity was hereditary, such error was cured by the giving of an instruction

for the defendant, that it had been proven by undisputed testimony that there was insanity in accused's family and that a predisposition to insanity on the part of defendant had been proven and that these facts should be considered established.

4. CRIMINAL LAW. *Evidence.* *Hypothetical questions.*
   It was not error for the trial court to sustain an objection to the questions propounded to an èxpert witness as set out in the opinion of the court, since such questions mixed an imperfect hypothetical· statement of facts with the information obtained by the witness from.listening to the testimony of the other witnesses, and. the second question calls for an opinion based both on personal knowledge of the defendant and upon an examination of the facts testified to by the other witnesses at the trial.

5. SAME.
   Where a witness is not testifying of his own knowledge the usual and proper method of examining an expert, where it is sought to obtain his opinion, is to propound to him a hypothetical question, that is one which assumes the truth of facts which the evidence tends to support, and which are stated in accordance with the theory of the examiner.

6. SAME.
   It may be convenient to allow an expert witness to be asked his opinion generally upon the testimony, without embodying it in a hypothetical question; but allowing this to be done is purely a matter of discretion with the court, and cannot be insisted upon as a matter of right.

7. SAME.
   The jury must know on what facts the expert witness bases his his opinion in order that they may judge of the value thereof. They are also entitled to know whether the opinion is based on facts coming under the witness' actual observation, or upon facts testified to by others.

8. CRIMINAL LAW. *Evidence.* *Opinion evidence.*
   On the trial of an accused for assault and battery with intent to kill, where the defense was insanity, an expert who had not sufficiently observed accused on the day of the assault to form an opinion cóuld not testify as to the state of mind of accused on that occasion, from his observation of accused's conduct for a time previous to such assault.

APPEAL from the circuit court of Attala county.
HON. J. A. TEAT, Judge.

B. F. Prewitt was convicted of assault and battery with intent to kill and appeals.

The facts are fully stated in the opinion of the court.

*Adams & Dobbs,* attorneys for appellant.

*Geo. H. Ethridge,* assistant attorney-general, for state.

Counsel on both sides filed elaborate briefs too long for publication.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a conviction of the crime of assault and battery with intent to kill and murder. On the occasion in question appellant, who was a merchant in the town of Ackerman, was in the street near his store shooting a pistol. What then occurred can best be told in the language of the witness Chrismond, sheriff of the county and the person assaulted; there being no dispute as to the correctness thereof: "It was on the afternoon of the 31st of October; I heard some shooting in town; and I started on over there to investigate it; when I got there Mr. Prewitt was out on the street shooting promiscuously; when he saw me he hollered for me to go back, and when I didn't go back, he hollered and said he would kill me if I didn't. I went on anyway; had advanced only a few steps when he shot at me one time. I proceeded up near where he was at—he was telling me to stop all the time. I stopped and told him that I wasn't armed, and, that I hadn't come over for any trouble—just reasoning the matter with him—told him the circumstances, that I was over there in an official capacity, and that I demanded order on the streets; just talked to him as fast as I could; don't remember exactly what all I did say. He was standing behind a tree till after I told him that I was not armed; he then came out from behind the tree and shot me." There was evidence indicating that appellant was drunk at the time of the shooting. His sole defense was

insanity, and there was some evidence in support there-
of, consisting principally of the opinions of witnesses who
had known him, and of the fact that his father, uncle and
five other blood relatives had been insane.    The acts of
appellant other than the shooting of Chrismond, on which
the opinions of these witnesses were based, were few in
number and of such character that the jury was well war-
ranted in finding that they were not inconsistent with the
conduct of a sane man.    We find no reversible error in
the record, and only two of the assignments thereof re-
quire special notice.

After introducing evidence of the insanity of his father
and other blood relatives, appellant asked two of the phy-
sicians who testified in the case "whether or not insanity
is hereditary and transmissible," which question, on the
objection of the state, the court declined to permit the
witnesses to answer.    The court might very properly
have allowed this question to have been answered, but its
declining so to do does not constitute a reversible error,
if error, in fact, at all.    That insanity is hereditary, as
hereinafter explained, is a matter of common knowledge,
and is therefore a fact not necessary to be proven.    The
court takes judicial notice of it.

The evidence of insanity among his blood relatives,
which appellant had already introduced, was admissible
solely on the ground that insanity is hereditary.    At
one time it seems to have been supposed that this fact
must be proven in each case before evidence of insanity
among the blood relatives could be received.    *Rex* v. *Tuck-
ett,* 1 Cox's Crim. Cas. 103.    But we venture to say that
no court of to-day would so hold.    The fact seems now
to be assumed by all of the courts and authorities with-
out question.    1 Wigmore on Evidence, section 232; 1
Wharton & Stille, Medical Jurisprudence, section 576
et seq.; *Baxter* v. *Abbott,* 7 Gray (Mass.) 71; *State* v.
*Christmas,* 51 N. C. 471.

To exclude facts from evidence which depend for their
value upon the law of heredity for the reason that such

law has not been proven is, or should be, as shocking to the judicial mind as the exclusion of facts from evidence depending upon the law of gravity for the reason that such law has not been proven. Heredity, "is a universal law of organic life," and is defined as "that biological law by which all beings endowed with life tend to repeat themselves in their descendants." 1 Wharton & Stille, Medical Jurisprudence, section 576.

But even if we are mistaken in this, any possible error in the ruling complained of was cured by the granting of appellant's first instruction, for "it cannot be too definitely stated," in the language of 14 Encyclopedia Brittanica (11th Ed.), p. 597, subtitle "Inheritance," "that it is not the insanity which is inherited, but only the predisposition to the manifestation of mental symptoms in the presence of a sufficient exciting cause," and, in the language of the court in *Baxter* v. *Abbott,* 7 Gray (Mass.) 71, the admissibility of evidence of insanity of blood relatives "rests upon the ground of the hereditary character of insanity; that a predisposition to the disease is frequently transmitted from parent to child. With such predisposition, the malady may not show itself in the child; for the child may not be exposed to any exciting cause. But with such hereditary taint, insanity supervenes from slight causes—causes apparently wholly inadequate to affect a mind without the predisposition." This first instruction is as follows: "The court instructs the jury that it has been proven in this case by undisputed testimony that there is insanity in the family of the defendant, and that a predisposition or susceptibility to insanity on the part of the defendant has been proven, and that in your consideartion of this case you should treat these facts as established."

Dr. B. F. Prewitt, an uncle of appellant, was sworn as a witness in his behalf, and gave as his opinion, based on his personal knowledge and observation of appellant, that he was insane at times. He was not asked and did.

not state when and for what periods of time appellant had appeared to him to be insane. He was then qualified as an expert on insanity and was asked if he had heard all of the testimony in the case, and he replied that he had heard "some of it," without stating what parts of it he had heard. He was then asked the following question, which was objected to by the state and the objection sustained: "From the testimony you have heard, and about the shooting as it occurred out there in front of Prewitt's store, his manner and conduct on that occasion, his conduct in his home, his statement on the way to jail, his statement to the deputy marshal at the jail, taking all this testimony and facts stated about his manner of shooting inside of his store and promiscuously up and down the street and in his yard, what would you say about the defendant, at the time he shot Mr. Chrismond, as to his sanity or insanity?" After some further examination he was then asked this question: "Now, Doctor, I will ask you this question, having sat here and heard the testimony in the case, you also heard the testimony introduced here when this case was tried here about two weeks ago?" to which he answered, "Yes, sir." He was then asked the following question, which was objected to and the objection sustained, and these rulings of the court are assigned for error: "Knowing the defendant in the case as you have known him all your life with reference to this question of mental disorder, the family having been affected, different members that come under your observation, and having heard the testimony which has been introduced here, as to how this shooting occurred, the defendant being in his store firing off his pistol and shooting promiscuously up and down the street, with a wild and unnatural look on his face and in his eyes, his unusual manner and expression going out on the streets after Chrismond, then shooting him, turning around, and going on to his residence shooting around there in his own yard, taking all of these circumstances

in detail, and the fact that Chrismond was not trying to do him any violence at the time he shot him, taking all these various statements from these different witnesses as being the facts as to his condition, acts, and demeanor, and that coupled with your own knowledge, I will ask you to state what your opinion was, whether B. F. Prewitt was sane or insane at the time when he shot Mr. Chrismond.''

It will be observed that these questions follow none of the rules laid down for the examination of an expert witness. They mix an imperfect hypothetical statement of facts with the information obtained by the witness from listening to the testimony of the other witnesses, and the second question calls for an opinion based both on personal knowledge of the defendant and upon an examination of the facts testified to by the other witnesses at the trial.

''The usual and proper method of examinining an expert where it is sought to obtain his opinion is to propound to him a hypothetical question, i. e., one which issumes the truth of facts which the evidence tends to support, and which are stated in accordance with the theory of the examiner; and . . . where the witness is not testifying to his own knowledge the only proper course is to ask him a hypothetical question, and that it is important that the form of the question should be such as not to require or permit him to draw conclusions of fact from the evidence in the case, and that where the evidence is conflicting, or relates to many details, or where inferences of fact must be drawn from the evidence, in order to be reasonably certain of the grounds on which an opinion is based, it is usually necessary that the facts should be stated hypothetically.'' Encyclopedia of Evidence, vol. 5, p. 615; *Reed* v. *State,* 62 Miss. 405.

It is true that there is very little conflict in the facts testified to by the various witnesses, and where there is no conflict in the evidence, it may be convenient to allow

the witness to be asked his opinion generally upon the testimony, without embodying it in a hypothetical question; but allowing this to be done is purely a matter of discretion with the court, and cannot be insisted upon as a matter of right. *Reed* v. *State*, 62 Miss. 409. And moreover, this witness expressly stated that he had only heard "some of" the evidence, and one of the questions was based partly on what he had heard of the evidence on a former trial with which the jury, before whom he was testifying, was, of course, not familiar. The jury must know on what facts the witness bases his opinion in order that they may judge of the value thereof. They are also entitled to know whether the opinion is based on facts coming under the witness' actual observation, or upon facts testified to by others.

Among other questions asked this witness were the two following, which were objected to, and the objection sustained: "I will put this question to you, Doctor. From your knowledge of his conduct for the last six or eight months, have you had an opportunity to observe his acts and conduct on various occasions? And, coupling all these things with your own personal knowledge of his behavior and conduct, what would you say the condition of mind of this defendant was on the day it was done?" and, "From your own knowledge of the family history of Prewitt's family, you have treated seven members for mental diseases, your association and knowledge of the defendant here for the last ten or twelve years, his having clerked for you in the town of Ackerman, and your having observed his conduct on different occasions, what would you say as to his mental condition on the day of the shooting of Mr. Chrismond there in the town of Ackerman?" The objections to these questions were properly sustained if for no other reason than that it was not shown that the witness had had appellant sufficiently under observation on the day of the shooting to enable him to form an opinion. The only evidence on this line was

that he had seen him at a distance, but had not spoken to him.

*Affirmed.*

COOK, J., dissenting.

There is no conflict in the evidence as to what occurred at the time of the shooting. Appellant was shooting up the town and when the sheriff remonstrated, and was approaching him in a pacific manner and with soothing words, he deliberately and for no reason at all, shot the sheriff. He was either drunk or crazy, or both. There is absolutely no variance in the testimony of the witnesses in regard to what occurred at the time of and immediately preceding the shooting of the sheriff—indeed, the testimony of the individual witnesses harmonized, dovetailed in fact—the testimony of each was the testimony of all.

The undisputed and unquestioned facts are that the father of appellant was insane at the time appellant's mother was impregnated with the germ of his life; that his father's brother was insane, and five other of his near blood relatives. It seems clear from the record that appellant was, or, at least, had been, a chronic alcoholic. He had taken the "Keeley Cure" for the "drink habit" three times. In addition to the near blood relatives of appellant being insane, the Thompson family, to which he was related, were all insane, according to Dr. Prewitt. So, it would seem that appellant had the taint of inasnity in his blood, and it is "common knowledge" chonic alcoholism is one of the symptoms of insanity.

Referring to the opinion of the court for the form of the questions propounded to Dr. Prewitt to obtain his professional opinion as to the condition of appellant's mind at the time of the shooting, it is difficult for me to see any flaw in the questions. As I have before stated, all of the eyewitnesses agreed as to what occurred and as to the appearance and language of the accused, and it seems to me that the court has drawn the line so fine that

the ordinary practitioner at the bar will find many practical difficulties in tracking the exceedingly narrow path marked out by the opinion of the court.

I understood that it is the business of the courts to administer practical justice, and to accomplish this end precise and technical rules must be and generally are ignored by the trial courts of the state. It must be borne in mind that Dr. Prewitt was, by far, the best qualified witness, on account of his intimate personal acquaintance with appellant and his personal and professional knowledge of his family history, coupled with his scientific training, to aid the jury in arriving at a proper verdict in the case—and when the court refused to allow this witness to give his opinion as to appellant's mental condition at the time of the alleged crime, he excluded from the jury the very foundation of his defense. Mere technical errors of the trial court made in the progress of the trial may be overlooked, and are frequently overlooked, by this court, and it seems to me, in approaching the questions involved in this appeal, the same wise, just, and practical rule should be followed, and the defendant should not be deprived of competent, pertinent, and exceedingly important testimony, because his counsel in propounding questions to a witness did not put them precisely and technically correctly. As I read the opinion of the court this is the basis of the affirmance. I do not agree with the court in its criticism of the form of the question—the form was immaterial because no two witnesses disagreed about the facts of the shooting.

My dissent is based upon the trial court's refusal to allow Dr. Prewitt to give the jury his opinion of the accused's mental condition at the time he fired upon the sheriff—and this court's approval of this action of the trial court. I refrain from any comment upon other features of the case to emphasize my views what I regard as a matter of great practical importance.