Evana Plantation, Inc. *v.* Yorkshire Ins. Co., Ltd.

May 19, 1952.

No. 38436 (58 So. (2d) 797)

Brunini, Everett, Grantham & Quin, for appellant.

Clements & Clements, and Watkins & Eager, for appellee.

**Ethridge, J.**

This case involves the question of whether damage caused to the roof of a building by sleet is covered by an extended coverage rider to a fire and lightning insurance policy which cover "direct loss by * * * hail". The trial court gave a peremptory instruction for the insurer.

The policy was issued by appellee, defendant below, Yorkshire Insurance Company, Ltd., on December 16, 1950 and admittedly was in force and effect at the time the loss was suffered. Appellant and plaintiff below, Evana Plantation, Inc., the insured, is a corporation owned by William Klaus, engaged in the general farming business about a mile south of Cary, Mississippi, in Sharkey County, and about seven miles south of Rolling Fork. Klaus testified that on the night of January 31, 1951, one barn on appellant's property which was insured for $1,000 was wholly destroyed, and another barn which was insured for $1,500 was damaged to the extent of six or seven hundred dollars, as a result of "ice and hail and sleet" falling on their roofs.

Appellee did not contradict the fact or extent of the loss. After all of the testimony was in, appellant moved for a peremptory instruction in the amount of $1,500; the denial of this motion is assigned as error. In view of this motion and the uncontradicted testimony of Klaus, appellant indisputably suffered a loss on the two barns insured by appellee in the amount of $1,500.

Nor is there any conflict in the evidence on the proposition that hail and sleet, along with ice, were substantial contributing causes of the roofs on the barns falling in at that time. The only witness on this issue was Klaus. He said that he did not know the exact time the barns fell in, but he thought that it was Wednesday

night, January 31, 1951. The barns were standing Wednesday night and were collapsed Thursday morning. He testified that on that Wednesday ice, hail and sleet came down, "Everything that could come on the ground except snow"; that the icy particles which fell from the sky were small and hard, and that "when you walked on them they would roll like a marble, about like a buckshot. * * *" These particles were a milky color. Klaus testified:

"Q. Was there any precipitation on the roof? A. It was a large amount of it. We worked Wednesday and Thursday with a large crew of men trying to get it off the roof.

"Q. Was that precipitation that fell from the sky frozen or just plain ice from rain falling on it? A. No, it was granulated. It fell and held and stuck there, and probably some rain fell that kept it there. They were granular in form."

He said that he did not know the difference between hail and sleet, or how they were formed. On cross-examination he further testified:

"Q. Is it your idea that the roofs of those buildings fell or collapsed because of the weight on the roof? A. That is my idea; I don't know of any other reason.

"Q. How much of that ice was originally glaze, or how much was sleet or ice, you wouldn't know about that? A. No sir."

The records of the U. S. Weather Bureau, introduced by appellee, reflect that sleet made up a considerable portion of the precipitation which fell January 29 through January 31. According to the testimony and weather bureau records, snow did not begin falling until Thursday, February 1, which was after the roofs had collapsed. Appellee introduced no evidence to contradict Klaus' testimony that sleet was a substantial contributing cause of the roofs of the buildings collapsing. Hence the rule stated in such cases as Miller v. Farmers'

Mutual Fire Insurance Association of North Carolina, 1930, 198 N. C. 572, 152 S. E. 684, 685, is applicable: "The exception presents the question whether the plaintiff must prove that a windstorm was the sole proximate cause of the damage or whether he may recover upon proof that it was the efficient cause, although snow upon the roof may have been a contributing cause. On this point the weight of authority is in support of the plaintiff's contention. ▮▮ The general rule is that, if the cause designated in the policy is the dominant and efficient cause of the loss the right of the insurer to recover will not be defeated by the fact that there were contributing causes."

In fine, the record establishes without any dispute: (1) that appellant suffered a loss on the two insured barns in the total amount of $1,500 on Wednesday night, January 31, 1951; and (2) that the loss was occasioned in substantial part by sleet falling on the roofs of the barns.

The remaining question is whether "hail" as defined within the terms of the insurance contract includes "sleet" . The extended coverage provision of the policy provides in part as follows:

"Extended Coverage

"(Perils of Windstorm, Hail, Explosion, Riot, Riot attending a Strike, Civil Commotion, Aircraft, Vehicles, Smoke, Except as Hereinafter Provided)

"In consideration of the premium for this coverage shown on reverse side hereof, and subject to provisions and stipulations (hereinafter referred to as 'provisions') herein and in the policy to which this Extended Coverage is attached, including riders and endorsements thereon, the coverage of this policy is extended to include direct loss by Windstorm, Hail, Explosion, Riot, Riot Attending A Strike, Civil Commotion, Aircraft, Vehicles And Smoke. * * *

"Provisions Applicable Only To Windstorm And Hail: This Company shall not be liable for loss

caused directly or indirectly by (a) frost or cold weather or (b) snow storm, tidal wave, high water, overflow of ice, whether driven by wind or not.

"This Company shall not be liable for loss to the interior of the building or the property covered therein caused (a) by rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail or (b) by water from sprinkler equipment or other piping, unless such equipment or piping be damaged as a direct result of wind or hail."

The circuit judge gave a peremptory instruction for the appellee, Yorkshire Insurance Company, Ltd., apparently on the theory that "hail" as defined in the policy does not include "sleet". However, an analysis of the terms of the contract and a consideration of the meanings of the word "hail" indicate that it includes "sleet" as one of the insured risks.

On the general nature and definition of "hail" and the relevance of that word to "sleet", appellants introduced L. T. Wade, an engineer, who had studied meteorology and who was in the commercial flying business operating an airport. He testified that by noon on Monday, January 29, the temperature had dropped considerably, it became "extremely cold", and very fine frozen particles were falling; that ice particles continued to fall on Tuesday, and that the ground and windows on his house had an ice glaze on them. He said that he did not know any way by which the icy particles which he saw falling could be classified as sleet or hail, at least by their "physical aspects"; that the general weather conditions for the three days in question extended all over central Missis-

sippi. His home was about 13 miles from appellant's plantation. He thought that hail falling in the winter time was very rare, but said he didn't think anybody ''can take two pieces of the same size and say if it is hail or sleet''. He did not say whether it was hail or sleet which fell on Monday through Wednesday, but stated that it was one of them.

Sumner B. Glasco, an engineer and a member of the Board of Supervisors of Sharkey County, testified for plaintiff. He said that he attended a meeting of the Lions' Club in Rolling Fork on Tuesday night, January 30, 1951, and the ground was frozen hard; that when he came out around 9:30 P.M. sleet and snow were falling on the automobiles; that on Wednesday morning he picked up some of the stuff that had fallen and it was sleet, ''of granular formation'', hard and frozen.

Appellee introduced in evidence certified copies of the U. S. Weather Bureau records at Vicksburg on January 29 through February 1, 1951, and of similar records for the same dates at Rolling Fork, Stoneville and Yazoo City. G. P. Weber, a meteorologist with the U. S. Weather Bureau, testified for appellee. He was in charge of the Weather Bureau office in Vicksburg. He undertook to interpret these reports. The substance of them was that around 12:30 P.M. on Monday, January 29, rain mixed with a little sleet began. The sleet continued to fall all night. On Tuesday, a freezing drizzle and sleet began again about 4 o'clock in the afternoon. The sleet ceased at 9:30 P.M., but the freezing rain continued all Tuesday night. On Wednesday rain and sleet fell throughout the day. During all of this period the temperature was below freezing.

Weber testified that there is a difference between sleet and hail ''from a meteorological point of view''. Hail, he said, is a warm weather phenomenon, which falls over a very restricted area, and sleet occurs over a wide area when temperatures are below freezing. He admitted that hail usually forms in thunderstorm clouds

and that there were such clouds during the period in question, which "could have caused" hail; that it was possible but highly improbable for hail to have occurred; that there is such a thing as small hail and soft hail, the latter being composed of snow and ice; that hail does not have to be hard or large; that the weather bureau in fixing its records does not attempt to keep any records of soft hail or small hail, those two precipitations being reported as "hail or sleet or snow"; that soft hail looks "like hail, like a piece of snow that has been frozen". He could not say that no small hail fell, but he stated that it was not an important form of precipitation during this period.

The foregoing testimony supports general definitions in the dictionaries. McMillan's Modern Dictionary defines "sleet" as "hail or snow with rain, fine drizzle of icy particles". The Century Dictionary and Encyclopedia define "sleet" as "hail or snow mingled with rain, usually in fine particles and frequently driven by wind." It defines the verb "sleet" as "to rain and snow or hail at the same time." Webster's International Dictionary (2d ed. 1950), page 1124, defines hail as including "summer hail" and "winter hail".

Hence it is clear that there is a type of precipitation designated as small hail or soft hail which occurs in winter months. For that reason appellee is not justified in taking the position that "hail" under the terms of the policy means only a summertime kind of precipitation. The word "precipitation" is defined as "a deposit on the earth of hail, mist, rain, sleet, or snow." Webster's International Dictionary (2d. et. 1950), p. 1944. To indicate the physical similarities between sleet and hail the testimony shows: (1) that a piece of frozen precipitation cannot be picked up in the hand and classified as sleet or hail; (2) that there is no difference in size between sleet and a certain type of hail; small hail is as small as sleet; (3) that hail falls in the wintertime as well as in the summertime; (4) that hail does not have to

be hard, there being a precipitation known as soft hail; (5) that hail is formed in thunderstorm clouds and such clouds were present during the time in question. The practical difficulty of distinguishing between sleet and certain types of hail and their stated physical and meteorological similarities are persuasive to a conclusion that the coverage of hail under the policy includes sleet. There appear to be no decided cases discussing this problem.

But the controlling factors are the terms of the insurance policy itself. The above-quoted provisions of the extended coverage clause applies to "perils of windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, except as hereinafter provided." The contract then proceeds to define in considerable detail each of these perils which are covered by the policy and to limit the area of coverage in particular instances. Hence it is reasonable to conclude that the quoted "provisions applicable only to windstorm and hail" are designed to cover "hail" and to define the meaning of that word within the terms of the policy. The pertinency of those provisions can be limited further. Clearly the loss was not produced by "frost or cold weather". The only other possibly available exclusions would be "snow storm" and "ice." All of the testimony indicates that snow did not begin until after the losses had occurred. And if the word "ice" were construed literally it would automatically invalidate the insuring clause which covers hail. Appellee did not write a policy covering hail and then by an exception exclude hail. The term "ice", therefore, does not exclude a coverage of sleet under the "hail" clause. Ice would seem to refer only to frozen water resulting from the falling of rain which freezes after it has landed on the insured's premises.

If appellee had desired to exclude sleet from coverage, it would have been a simple matter to do so, since both sleet and hail are ice and sleet is neither specifically in-

cluded or excluded. Apparently the insurer regarded sleet as being in the category of hail, and certainly to the layman, reading the policy in its ordinary, everyday sense, the only difference between sleet and hail would be in the size of the particles. Yet appellee's own witness admitted that there is such a thing as small hail which falls in below-freezing temperatures.

Moreover, it is a well-established rule of construction that ██ whenever there is any ambiguity in a policy of insurance, it is construed strictly against the insurance company which drafted the contract. Mississippi Ben. Ass'n v. Majure, 1947, 201 Miss. 183, 29 So. (2d) 110; Great American Ins. Co. v. Bass, 1950, 208 Miss. 436, 44 So. (2d) 532. If appellee had not intended to include sleet within the definition of the word "hail", such a limitation should have been placed in the clause designated "provisions applicable only to windstorm and hail". This is further confirmed by the statement in the policy that "hail" did not include frost, or cold weather, or snow storm or ice. Sleet was not mentioned.

In the execution of this contract, appellee apparently considered hail, rain, snow, wind, dust, and windstorm as including all of the elements which could cause damage to the property. We think that sleet is included within the first risk.

Appellee argues that it was the intent of the policy to specifically exclude damage caused by "cold weather" phenomena, and that this specific exclusion referred to "all usual cold weather phenomena such as glaze, freezing rain, sleet or ice storm"; in other words, that the exclusion of loss caused by "cold weather" includes loss caused by sleet. But clearly sleet more closely resembles "soft hail" or "small hail" than it does "cold weather".

In brief, the question is the meaning of the contractual coverage of "hail" and its definition in the policy. The testimony as to the physical distinctions between small and soft hail and sleet indicate at least as many similarities as dissimilarities. This is persuasive on the contrac-

tual meaning of "hail". And the contract itself undertakes to define "hail", by stating what the term does not include. Neither the exclusionary phrase "cold weather" or word "ice" are applicable here. Interpretation of the latter in literal terms would automatically invalidate the insuring clause which covers "hail". ██ ██ We think that the clause in question, as defined within the terms of the insurance contract, places the present loss from sleet within the coverage of perils from "hail". For the foregoing reasons, the judgment of the circuit court is reversed and judgment is rendered here for appellant.

Reversed and judgment rendered for appellant.

**Roberds, P. J.,** and **Hall, Lee** and **Arrington, JJ.,** concur.