PROVIDENCE WASHINGTON INSURANCE CO. *v.* WEAVER

No. 41984 October 23, 1961 133 So. 2d 635

142

*W. W. Brand, Jr.,* Houston; *Watkins & Eager,* Jackson, for appellant.

144

*Armis E. Hawkins, McCraine & Fox,* Houston, for appellee.

ETHRIDGE, J.

This is a suit brought in the Circuit Court of Chickasaw County by appellee, Elias Weaver, Jr., on an insurance policy covering an owner for the accidental death of livestock in transit. The principal issues are whether the circumstantial evidence sufficiently showed that certain cattle which were never found died as the result of overturning of the truck, and whether the insurance company is estopped to deny the validity of a method of adjustment of the amount of loss for certain injured cattle sold by agreement with appellant's agents. The jury returned a verdict for plaintiff in the amount of $8,351.94 against the defendant, Providence Washington Insurance Company, appellant here. We affirm the judgment based upon that verdict.

I.

On June 30, 1959, the insurance company, through its agent, Wallace Norman of Houston, Mississippi, wrote for Weaver an inland marine policy covering three tractors and trailers, on a motor truck cargo owners form. The policy provided as follows:

"Owners Coverage For Cargo In Transit — This policy insures the lawful goods and merchandise consisting principally of livestock owned by the insured or for which the insured may be legally liable, for direct loss or damage caused by any of the perils specified herein in transit while loaded for shipment in or on vehicles described herein anywhere within the radius specified in Paragraph 3 of this form. . . ."

"Perils Covered — This policy covers direct loss or damage caused by: . . . (F) Overturning of vehicles on which the shipments insured are being transported; (Overturning as used herein shall mean the upsetting of the vehicle to such an extent that it comes to rest on its side or top.) . . ."

"Exclusions: . . . 8. This policy does not cover: . . . (F) Loss of or injury to animals, except against accident causing death or rendering death necessary; . . . ."

Weaver operated the Chickasaw Commission Company in the business of selling cattle. On Friday night, July 31, 1959, appellee had 92 cattle loaded on a trailer-tractor unit insured under the policy. These were thoroughbred calves 4-6 months of age, of an average value each of $118.58. The trailer was properly loaded, in two decks. The driver, David Wright, left Houston, Mississippi, around 9 P.M., headed for Amarillo, Texas. Near Minter City, Mississippi, a brake hose came loose, causing the rear wheels to lock and pulling the right wheels of the tractor and trailer onto the right or north shoulder of the highway. The driver procured a wrecker, and, while it was being hooked up, the trailer turned over on its right side. The front part of the top of the trailer burst open, and after considerable effort the driver managed to pull all of the cattle still living out of it.

About 200 yards north of the highway was Tallahatchie River, a flowing stream 150-200 feet wide. North of the highway was an old fence with a corn patch be-

tween it and the road. After the driver got the cattle out, they started through the corn patch, and he heard them hit the fence, tear it down, and move swiftly toward the river. When the cattle were loaded, in accord with good practice in the business, they had not been fed or watered for about 12 hours, so when the trailer turned over these cattle had not had any feed or water for 17-18 hours.

After Weaver sent other trucks and employees to the scene, they rounded up a number of the calves, but did not find 36 of them. The men saw tracks going into the river. They pulled one calf out of the quicksand on the edges of the river. Weaver's employees went around to the north side of the river, but found no tracks coming out of it. They looked up and down that area on both sides for several miles, but failed to find the 36 missing cattle. Eighteen cattle died immediately in the wreck. Thirty-eight head were brought back to Houston on Sunday night,, and two of them died. After several days of diligent search, Weaver's employees were not able to find any of the 36 missing cattle. They were never located.

Appellant concedes it is liable for the loss of the twenty cattle which died at the scene or shortly after the accident, and has deposited that sum of $2,371.60 into the registry of the trial court for Weaver's benefit.

## II.

■■ ■ The first issue is whether the evidence was sufficient to show that the 36 cattle, which disappeared and were never found, died as the result of the accident. The insurance policy covers direct loss caused by overturning of the vehicle where, as required by the exclusion clause, the accident caused death or rendered death necessary. A plaintiff is not bound to prove a loss beyond a reasonable doubt. It is sufficient to warrant a recovery if he shows by a fair preponderance of evidence that the

loss was brought about by a risk insured against. ██ ██ Circumstantial evidence from which the jury might reasonably infer the facts of the death of these cattle and the accident being its proximate cause is sufficient for this purpose. 46 C.J.S., Insurance, Sec. 1356; 29A Am. Jur., Insurance, Secs. 1874, 1875.

██ ██ The policy covers "direct loss" caused by overturning of the vehicle. The phase "direct loss" means a loss occurring directly from the overturning and the immediate or proximate cause, as distinguished from remote. 12A Words and Phrases (1954), pp. 137-138; 5 Appleman, Insurance Law and Practice (1941), Sec. 3083. ██ ██ If the cause designated in the policy is the dominant and efficient cause of the loss, the right of the insured to recover will not be defeated because there were contributing causes. Evana Plantation v. Yorkshire Ins. Co., 214 Miss. 321, 325, 58 So. 2d 797 (1952). ██ ██ In short the proximate cause to which the loss is to be attributed may be the dominant or efficient cause, although other and incidental causes may be nearer in time to the result and operate more immediately in producing the loss. 29A Am. Jur., Insurance, Sec. 1134.

██ ██ Appellant used two expert witnesses with considerable knowledge of cattle and their propensities. Their testimony will be discussed subsequently. However, considering the accepted rules and the evidence, we think it was an issue for the jury as to whether the 36 cattle which disappeared and were never found died as the proximate result of the overturning of the trailer. They were shaken up from the overturn and had had no food or water for about 18 hours. When they were removed from the trailer, they broke through the corn field and a fence and headed toward the river, which had quicksand on its banks. Many tracks were found going into the stream, and none coming out on either side. Other evidence indicated these calves were badly

bruised and highly susceptible to pneumonia and other diseases. when exposed to the elements.

### III.

 █ Thirty-eight live cattle were returned by Weaver's employees to. Houston on Sunday night following the accident. Two of them died. Weaver testified without dispute that Monday morning he telephoned Wallace Norman, the local agent for appellant insurance company, who had written the policy for him. He advised Norman that the remaining 36 cattle in Houston "were awfully sick and all bruised up and everyone of them was going to die if something wasn't done with them." Norman stated that he would get in touch with "the insurance company", call him back, and let him know what to do. Plaintiff held a sale each Monday at his Chickasaw Commission Company. Norman then telephoned appellee and told him to go ahead and sell the cattle "and get what we could out of them and that they would take care of the difference." Relying on this, and in accord with what an adjuster told his employees, Weaver sold the cattle at his barn on Monday, advising the purchasers that they had been injured in an accident. Before the accident these 36 cattle were worth $4,268.88; after it and at the sale they brought $2,558.22. This represented a loss to Weaver of $1,710.66.

Weaver said that he had handled cattle for many years and knew when they were bruised or sick. He told Norman that all of them were going to die "if something wasn't done with them immediately." The jury awarded plaintiff the stated damages of $1,710.66 for the loss suffered by him with reference to these 36 injured and ill cattle. It denied any recovery for expenditures occurred in rounding up, treating and caring for them, and plaintiff took no cross-appeal on that issue. Plaintiff obtained an instruction to the jury that, if it believed that defendant through its representatives within the

apparent scope of their authority instructed plaintiff through himself and his employees to round up all live cattle after the accident, treat and care for them, and sell them while still alive, and induced him to do this upon the representation that defendant would reimburse plaintiff for the loss sustained in selling the cattle while alive, and plaintiff relied on these representations, defendant was bound thereby and was liable for such loss.

Rex Smith, who worked for plaintiff at the time of the accident, testified that he was at the scene on Saturday morning when a Mr. Blanks arrived as a representative of appellant; that Blanks instructed him and the others to catch all the cattle they could, care for the sick ones, and the company would "take care of the rest of them." Smith asked Blanks if he could sell the sick and injured cattle, and Blanks told him to go ahead and sell them if he could. Smith said he relied on those representations. Doyle Berry, an employee of plaintiff, said that Blanks came to the scene and told them he represented appellant, saying if there were any crippled or damaged cattle which could be salvaged, to go ahead and do that by selling them, and the company would take care of the loss.

R. L. Blanks, an insurance adjuster representing appellant, denied such representations. Norman called him about the accident and he went immediately to the scene. He contacted Wright and another man and told them if they found any cattle with broken bones to render them immediately, salvage the meat, and send it to refrigeration. He instructed them to keep a record of their expenses. He stated he told plaintiff's agent that he had not read the policy and did not know its terms, and did not tell them the company would pay for any loss after the injured cattle were sold. On cross-examination, Blanks admitted that his advice was designed to properly handle and adjust the claim, that he wanted to be helpful. He admitted he told them to do all they could

to salvage the cattle and reduce the loss, but said it was not his intent to give plaintiff's agents the impression that the insurance company would take care of the loss. However, he told them to do all they could to make the loss as small as possible.

The jury manifestly accepted the versions of Wright and Smith as to their conversations with Blanks, the insurance adjuster. When this testimony is considered along with that of Weaver, we think it was proper to submit to the jury the issues of whether these representations and promises were made by the adjuster and the local agent, Norman, were relied upon by Weaver, and based upon them the cattle were sold.

 ██ The policy covers loss of and injury to cattle from an accident causing death or rendering death necessary. Appellant argues that the rule, that estoppel is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded, applies here. Maryland Casualty Co. v. Adams, 159 Miss. 88, 131 So. 544 (1931); Hartford Accident and Indemnity Co. v. Lockard, 239 Miss. 644, 124 So. 2d 849 (1960); 29A Am. Jur., Insurance, Sec. 1135. However, estoppel here is not used to increase the subject matter of the coverage, the cattle, or to increase the risks insured against, overturning of trailer by accident causing death. Weaver's testimony is undisputed that all of these 36 cattle were seriously injured and were going to die if something was not done with them. If he had not sold them, and they had all died, the policy protected Weaver. If he sold them and obtained some salvage price, as he did, he thereby minimized the loss to the insurance company. Both the company's adjuster and its local agent instructed insured to do that, and he acted on those promises. It was to the company's advantage to minimize this loss as much as possible. What the parties did was to adjust the amount of loss by a salvage sale

where developments could not be exactly predicted and the outcome was doubtful.

An adjuster for an insurance company is a special agent of such company, and his powers and authority are usually coextensive with the business entrusted to his care — the ascertainment and adjustment of a loss. 29A Am. Jur., Insurance, Sec. 1605. Under the general principles of agency, appellant is estopped to deny the authority of its adjuster, Blanks, and its local agent, Norman, who acted within the apparent scope of their authority in this particular case. 45 C. J. S., Insurance, Sec. 1101.

## IV.

There was no reversible error in the testimony of two expert witnesses offered by plaintiff: a veterinarian who specialized in the treatment of cattle and an experienced cattle auction owner. Their testimony pertained to what in their opinion probably happened to the 36 cattle which stampeded across the field, through the fence and toward the river, and were never found. Perhaps a few of their conclusions as to what probably happened to this group of livestock were insufficiently based upon the evidence. However, the testimony of the veterinarian, about whom appellant particularly complains, was developed in part by appellant's own counsel in a detailed cross-examination. The evidence as to what happened at the scene of the accident was undisputed.

The trial court in its sound discretion was warranted in permitting these two cattle experts to remain in the courtroom during the presentation of this testimony. Smith v. State, 95 Miss. 786, 794, 49 So. 945 (1909). The usual and proper method of examining an expert, where it is sought to obtain an opinion, is to propound to him a hypothetical question, but this is not always necessary. Where there is no conflict in the evi-

dence, as here, on the events at the scene of the accident, it may be convenient to allow the witness to be asked his opinion generally upon the testimony without embodying it in a hypothetical question. 58 Am. Jur., Witnesses, Sec. 851.

It is the duty of the trial court to control the propounding of hypothetical questions and the method of testifying by expert witnesses. It exercises a judicial discretion which ought not to be overridden, unless it very clearly appears to have been wrongfully exercised. We find no abuse of that discretion in the instant case, where the expert witnesses, after hearing the testimony, gave their opinions as to what probably happened to the 36 cattle which disappeared in the vicinity of the river. Reed v. State, 62 Miss. 405 (1884); Prewitt v. State, 106 Miss. 82, 88-89, 63 So. 330 (1913); see also Cates v. State, 171 Miss. 106, 123, 157 So. 95 (1934). There were no errors in the instructions given and refused.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.