361 So.2d 333 (1978)
Ernest COLLINS
v.
STATE of Mississippi.
No. 50557.
Supreme Court of Mississippi.
August 2, 1978.
Rehearing Denied August 23, 1978.
*334 Philip T. Dean, Billy J. Jordan, Columbus, for appellant.
A.F. Summer, Atty. Gen., by Catherine Walker Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., SUGG and BROOM, JJ., and LOGAN, Commissioner.
FLOYD J. LOGAN, Commissioner for the Court:[1]
Appellant, Ernest Collins, was indicted by the Lowndes County Grand Jury for the murder of his wife, Vieatrice. He was subsequently convicted of manslaughter in the Circuit Court of Lowndes County, Mississippi and sentenced to fifteen (15) years imprisonment with the Mississippi Department of Corrections.
Appellant assigns the following as error on his appeal to this Court:
1. The trial court erred in overruling appellant's motion for a mistrial based upon the trial court's exempting from the rule the State's expert witness and denying appellant's motion requiring the State to put the expert witness on the stand first.
2. Appellant urges the Court to abandon the M'Naughten Rule as to determination of criminal responsibility and to accept and adopt the rule of irresistible impulse stated in Parsons v. State, 81 Ala. 577, 2 So. 854 (1887).
The facts will be discussed as they relate to each assignment of error.

Assignment No. 1
Prior to the taking of testimony, the State moved the court to exempt Dr. Donald Guild, psychiatrist for the Mississippi State Hospital at Whitfield, from the rule of sequestration of witnesses from the courtroom. The State presented no grounds or basis for the motion. Appellant's objection to the motion was overruled by the court. Appellant then made a motion for a mistrial which was overruled. Appellant's counsel then moved the court to require Dr. Guild to testify first for the State since he was exempted from the rule. This motion was also summarily overruled by the court. Dr. Guild was eventually called as the final witness by the State in rebuttal. He apparently remained in the courtroom during the entire trial and heard all of the witnesses testify, including appellant's experts on the issue of sanity. No objection to the testimony of Dr. Guild was made by appellant when he was called by the State.
The administration of the rule on the sequestration of witnesses has been held by this Court to be a procedural matter, the enforcement of which is within the sound discretion of the trial judge. Hollins v. State, 340 So.2d 438 (Miss. 1976); Butler v. State, 320 So.2d 786 (Miss. 1975). It is further recognized in this State that an expert witness may remain in the courtroom during the other witnesses' testimony and base his opinion upon the prior testimony of other witnesses. Providence Washington Insurance Co. v. Weaver, 242 Miss. 141, 133 So.2d 635 (1961); Smith v. State, 95 Miss. 786, 49 So. 945 (1909). This method of presentation of expert witnesses' testimony is especially useful in criminal cases where the defense is insanity. Generally, both sides offer lay witnesses who testify as to *335 various actions of the defendant during his lifetime indicating sanity or insanity. Other experts also may testify as to facts or objective observations of the defendant which formed the basis of their opinions as to sanity or insanity. This testimony of other lay and expert witnesses is often helpful to the expert in forming his opinion. This method of presenting expert testimony is permissible providing the following rules are observed:
1. The jury must know on what facts the expert bases his opinion so that they may judge the value thereof.
2. The jury is also entitled to know whether the opinion is based on facts coming under the witness' actual observation, or upon facts testified to by others.
3. The facts assumed by the expert must not be conflicting. 31 Am.Jr.2d, Expert and Opinion Evidence, §§ 39, 40 and 41 (1967); McCormick, Law of Evidence, § 14 Expert Testimony at p. 30-1 (1954); Prewitt v. State, 106 Miss. 82, 63 So. 330 (1913).
The expert witness may also base his opinion upon facts or observations made by other experts, but not their inferences or conclusions. McCormick, supra.
In the state of the record, at the time the State made the motion to allow Dr. Guild to remain in the courtroom, there was nothing before the trial court to cause it to exclude him under the general rule. Although it would have been the better practice for the trial court to require the State to specify its reasons for requesting that Dr. Guild be exempted from the rule, the record does not demonstrate any error as a result of that failure. Appellant made no objection to Dr. Guild's remaining in the courtroom when his psychiatric experts testified. An examination of Dr. Guild's testimony demonstrates that he relied upon his observation, examination, and evaluation of the appellant, and not upon anything learned from appellant's expert testimony. It cannot be said on the record before us that the trial judge abused his discretion in allowing Dr. Guild to remain in the courtroom during the other witnesses' testimony.

Assignment No. 2
Appellant urges the Court to abandon the M'Naughten Rule as to the determination of criminal responsibility and to accept and adopt the Parsons Rule.
The facts relevant to this assignment are as follows: On May 21, 1976, appellant, 68 years of age, spent most of the day working in the sun in his garden along with his wife planting tomatoes. At approximately 7:00 p.m. that evening, the appellant and his wife were visited by Stanley and Elsie Mae Cherry, long-time friends. The two couples sat in the kitchen engaged in friendly conversation for approximately 20 minutes. At that time Mrs. Collins showed Mrs. Cherry a bruise on her leg. When Mrs. Cherry asked how it happened, Mrs. Collins said that Mr. Collins had struck her with a fence post. Appellant and his wife began to argue, and appellant stood up and told her, "I'm going to kill you." He then went up the hallway toward the bedroom and obtained a single-barreled shotgun and loaded it. When appellant returned to the kitchen with the shotgun in hand, first Mr. Cherry and then Mrs. Cherry exited the house and watched through the window from outside. They observed appellant pointing the shotgun at Mrs. Collins' stomach and heard Mrs. Collins call out, "Hon, Honey, don't shoot me  Elsie, help me." The sound of a shot and then Mrs. Collins' body hitting the floor was heard. Appellant then came out of the house saying, "I did it, I did it, I did it." Appellant then called his son-in-law, George Rose, and told him, "I killed her. Call the sheriff, call the ambulance."
Mr. Cherry then assisted his wife, who had become ill, across the street to the home of Mrs. Zada Bailey to seek assistance. Upon telling Mrs. Bailey of the events at the Collins home, Mrs. Bailey called appellant on the phone. Appellant told Mrs. Bailey he had killed his wife. She asked if he needed help, and he replied that he had already called the sheriff and the ambulance.
*336 Later, on the evening of May 21, appellant gave a full statement of the events surrounding the shooting to the Lowndes County Sheriff.
Both Mr. and Mrs. Cherry testified that two weeks prior to the shooting, appellant had stated to them that he was going to kill Mrs. Collins and himself.
Appellant testified at trial that he suffered from diabetes and hypertension and took insulin for the diabetes and other medication for his hypertension. He stated he could not remember the events of the night in question at the time of the trial.
Dr. Bernard H. Ellis, a practicing psychiatrist in Columbus, was called as an expert witness by appellant. He found appellant to be borderline mentally retarded with an I.Q. of 79, and a third grade education. Appellant told Dr. Ellis he had no recall of the events of the night in question. It was Dr. Ellis' opinion that appellant was suffering from organic brain syndrome due to arteriosclerosis or hardening of the arteries. It was also his opinion that under stress or pressure appellant could act impulsively, very aggressively without forming any intent. From an examination of appellant, it was Dr. Ellis' opinion that appellant did not understand the nature and qualities of his act and was unable to distinguish between right and wrong.
Dr. Carmen Simon, a psychiatrist with the Regional Mental Health Complex, was also called by appellant to testify. Appellant denied to him that he had any recollection of the events of the night in question, other than being questioned at the police station. Dr. Simon found appellant to be suffering from organic brain syndrome, secondary to aging or hardening of the arteries. It was Dr. Simon's opinion, based on the examination of appellant, that at the time of the alleged offense he did not know the nature or quality of the act he was doing.
Dr. James Lane, III, a clinical psychologist, was called by appellant. He also diagnosed appellant as suffering from organic brain syndrome. Appellant also denied to him any recall of the events of the day in question after walking from the tomato patch to his house.
Dr. Donald Guild, director of Forensic Psychiatry at Mississippi State Hospital, Whitfield, Mississippi, was called in rebuttal for the State. Dr. Guild found appellant to be functioning at an eighth grade educational level. He did not diagnose any major mental disease or disorder in appellant. It was Dr. Guild's opinion based on a reasonable medical certainty that appellant understood the nature and quality of his acts and knew the difference between right and wrong on May 21, 1976. It was his opinion that appellant was suffering from a mild organic brain syndrome affecting his memory and concentration.
In this second assignment of error, appellant urges the Court to abandon the M'Naughten Rule as to the determination of criminal responsibility and to adopt the irresistible impulse modification of the M'Naughten Rule set forth in Parsons v. State, 81 Ala. 577, 2 So. 854 (1887).
As the Court pointed out in Jones v. State, 288 So.2d 833 (Miss. 1974), in an opinion by Justice Inzer:
Appellant's first assignment of error is in reality not an assignment of error. Appellant does not charge that the trial court committed any error in regard to the instruction granted on the issue of insanity. Appellant admits that what he is striving for under this assignment is an opinion of this Court abandoning the M'Naughten rule, or at least to follow what he contends is the true M'Naughten rule. 288 So.2d at 834.
In Jones v. State, supra, the rule of Parsons v. State was urged upon the Court as the "true M'Naughten rule." This position was rejected by the Court at this time.
Numerous onslaughts have been made upon the M'Naughten Rule, the most recent being repelled in the cases of Hill v. State, 339 So.2d 1382 (Miss. 1976); Myrick v. State, 290 So.2d 259 (Miss. 1974); Harvey v. State, 207 So.2d 108 (Miss. 1968). The most recent case, Hill v. State, had a specially concurring opinion written by Justice Robertson *337 and concurred in by Justices Patterson and Inzer, wherein it was recommended that Section 4.01 of the American Law Institute's Model Penal Code (1962) be adopted in Mississippi. None of the recent opinions have espoused the Parsons rule, Harvey v. State, supra, merely referring to it as representing the "irresistible impulse" rule.
The rule of the Parsons case is as follows:
[T]he inquiries to be submitted to the jury, then, in every criminal trial where the defense of insanity is interposed, are these: First, Was the defendant at the time of the commission of the alleged crime, as a matter of fact, afflicted with a disease of the mind, so as to be either idiotic, or otherwise insane?
Second, If such be the case, did he know right from wrong, as applied to the particular act in question? If he did not have such knowledge, he is not legally responsible.
Third, If he did have such knowledge, he may nevertheless not be legally responsible if the two following conditions concur:
(1) If, by reason of the duress of such mental disease, he had so far lost the power to choose between the right and wrong, and to avoid doing the act in question, as that his free agency was at the time destroyed;
(2) And if, at the same time, the alleged crime was so connected with such mental disease, in the relation of cause and effect, as to have been the product of it solely. (2 So. at 866-7).
The first and second paragraphs of the quoted portion of the Parsons case are basically the M'Naughten rule. Appellant's expert testimony was that the organic brain syndrome from which he suffered could make him confused, disoriented and exercise poor judgment. Certainly if he was able to exercise any judgment at all, his free agency was not at the time destroyed. There are many people who exercise poor judgment who are not medically or legally insane.
It further cannot be said that the alleged crime was so connected with the organic brain syndrome "as to have been the product of it solely." Appellant's experts testified that the condition of appellant was intermittent with the poor judgment, confusion and disorientation being present during periods of stress. There was no evidence of any periods of deviant behavior either before or after the incident in question. Gravitating against the argument that the killing was the result of an irresistible impulse was the fact that two weeks prior to the killing, appellant told Mr. and Mrs. Cherry that he intended to kill his wife and himself. This testimony was uncontradicted. Earlier that day appellant had struck his wife with a fence post. The record further reflects that appellant and his wife argued prior to the shooting and that appellant was in a rage of anger.
Appellant testified and said he could not remember the acts in question. However, appellant's statement given to the police officers the night in question stated that:
My wife and I were arguing and I got mad and she was mad. Both of us were crazy mad. My wife was in the kitchen and I went to the frute [sic] closet and I got my 20 ga. single shot, shotgun and went to the bedroom and got the shell and put it in the gun. I don't remember if I got the gun or the shell first. I went back in the kitchen with the shotgun. I don't remember if we said anything or not. She wasn't sitting down so she must have sat down after I shot her. After I shot her, I called my son-in-law, George Rose, and I told him to call the Sheriff and ambulance... .
Appellant, in his statement, attributes the killing to anger and not the duress of any mental condition. The testimony supports the verdict. Implicit in the verdict is the finding that appellant knew the difference between right and wrong when he shot and killed his wife.
The jury was given an instruction which allowed them to find that appellant killed his wife in the heat of passion and without malice aforethought, and if so, to find him guilty of manslaughter. The jury so found, and the appellant has received this benefit from this defense.
*338 For these foregoing reasons, this cause should be and is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] pursuant to chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.