## YAZOO & M. V. R. Co. *v.* DAY.

[82 South. 148, Division A. No. 20782.]

1. RAILROADS. *Crossings. Signals from cars. Motor cars.*

   Section 4045, Code 1906, (Hemingway's Code, section 6669) requiring the bell to be rung or whistle blown at a distance of three hundred yards from crossing, does not apply to motor cars used by section hands.

2. RAILROADS. *Prima-facie negligence statutes. Applicability.*

   The *prima-facie* negligence statute, Code 1906, section 1985 (Hemingway's Code, section 1645), does not apply where a motor car used by railroad section hands frightened a horse at a crossing but did not strike the horse or the cart to which it was attached.

3. RAILROADS. *Frightening horses by motor cars at crossing. Question for jury.*

   Where plaintiff was injured at a crossing because his horses became frightened and ran away, caused by the approach of a motor car operated at night by a section crew without headlight or signals, the question of negligence on the part of the operatives was a question for the jury.

APPEAL from the circuit court of Wilkinson county. HON. R. E. JACKSON, Judge.

Suit by Edward B. Day against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Clinton H. McKay, Chas. N. Burch* and *H. D. Minor,* for appellant.

Where there is a conflict in the testimony as to material facts, a peremptory instruction for either party is improper, and upon consideration of plaintiff's motion for a peremptory instruction, the evidence in its aspect most favorable to defendant must be taken as true. *Railroad* v. *Prine,* 118 Miss. 90; *Railroad* v. *Prince,*

112 Miss. 20; *Trading Co.* v. *Lumber Co.*, 110 Miss. 31.

Even where the testimony is undisputed, if the minds of reasonable men may well differ as to the circumstances of the case, the question of negligence or non-negligence is for the jury and not for the court. *Railroad* v. *Floyd,* 55 So. (Miss.) 287; *Railroad* v. *Moore,* 81 Miss 15; *Railroad* v. *Mason,* 51 Miss. 234, 244.

Whether the omission of those on the motor car to give a signal on approaching a highway crossing was the proximate cause of the injury complained of, is peculiarly a question of fact for the jury under proper instructions by the court. *Railroad* v. *Crominarity,* 86 Miss. 464; *Railroad* v. *Armstrong,* 93 Miss. 583; *Skipwith* v. *Railroad,* 95 Miss. 50.

The failure to equip this section motor car with headlight, bell or whistle was not negligence as a matter of law, and the operatives thereof were not negligent as a matter of law, in approaching this crossing about 'dusk running at six miles an hour, making no unusual noises calculated to frighten horses, without sounding a warning of their approach and without displaying a headlight, where the car could have been seen, and when it was their purpose and intention to stop the car at the crossing and carry it from the track. *McCerrin* v. *Railroad,* 72 Miss. 1013; *Railroad* v. *Howerton,* 115 Ky. 89, 72 S. W. 760, 103 Am. St. Rep. 295; *Railroad* v. *Juday,* 49 N. E. (Ind.) 843; *Clinebell* v. *Railroad,* 110 N. W. (Neb.) 347.

Section 6669 of Hemingway's Code requiring each locomotive engine to be provided with a bell weighing thirty pounds or steam whistle which can be heard distinctly at three hundred yards, and requiring the bell to be rung or the whistle to be blown on approaching a highway crossing, has no application to a small motor car used by railroad section hands, such as the one here involved. *Railroad* v. *Juday,* 49 N. E. (Ind). 483; *Railroad* v. *Uremeister,* 112 Ill. App. 346.

Section 1645 of Hemingway's Code (the socalled *prima-facie* statute) has no application under the facts of this case, because plaintiff was not struck by the car nor was the injury inflicted by the running of the car. *Railroad* v. *Weathersby,* 63 Miss. 581; *Railroad* v. *Thornton,* 65 Miss. 256; *Railroad* v. *Kea,* 96 Miss. 195; *Lowe* v. *Railroad,* 81 Miss. 9; *Railroad* v. *Kea,* 198 Miss. 389; *Railroad* v. *Gassoway,* 111 Miss. 509.

There is no hard and fast rule of the common law requiring a signal to be given when a hand car or motor car approaches a highway crossing and, where no signal is given, the question of negligence or non-negligence in that regard is for the jury to determine under all the facts and circumstances of the case. *McCerrin* v. *Railway,* 72 Miss. 1013; *Railroad* v. *Howerton,* 115 Ky. 89, 72 S. W. 760, 103 Am. St. Rep. 295; *Railroad* v. *Uremeister,* 112 Ill. App. 346; *Clinebell* v. *Railroad,* 110 N. W. (Neb.) 347; 3 Elliott on Railroads, sec. 1179E.

*Bramlette & Bramlette,* for appellee.

Was the negligence of appellant in having no light nor in giving no signal the cause of appellee's injuries? This fact stands without contradiction in this record nor did appellant make any effort to combat it, again to quote Mr. Day: " . . . had they had any lights on the car or given a signal I would not have drove up there on the crossing." Nowhere in this record is there the slightest tendency toward a conflict as to this fact. Nor is it denied that after Mr. Day got on the crossing that what frightened his horse was this motor car coming on him in the dark, within less than thirty-three yards and without lights, which was enough to make any old family horse forget all of his gentleness and training and to think that all of the lions and tigers in Africa were about to spring on him.

Judge FLETCHER, for this court, in the case of *Skipwith* v. *Railroad Company,* 95 Miss. 50, said: "Travelers

on the highway have a right to insist that these signals
be given, not only that they may keep off the track,
but that they may not drive their teams so near the
track that fright will certainly follow."

Liability of a railroad company for negligence need
not essentially be fixed by a statute, to quote Judge
Sykes, for this court, in the case of *I. C. R. R. Co.* v.
Dillon, 111 Miss. 520: "While the railroad company was
under no statutory duty to sound alarms for this cross-
ing at the same time it is our opinion that its common-
law duty required the engineer to give signals of his ap-
proach to this much used crossing . . . " To il-
lustrate further: This court in the cases of *Fulmer* v. *I. C.
R. R. Co.*, 68 Miss. 355, and *A. & V. R. R. Co.* v. *Summer*,
68 Miss. 566, held that it was negligence *per se* for a
railroad company to make a flying switch across the
street of a town along which persons are constantly
accustomed to walk, prior to the adoption of section
3548 of the Code of 1892, and without reference to any
statutory provision.

The facts in the case of *V. & M. R. Co.* v. *Alexander*,
62 Miss. 496, were that Dr. John Alexander wished to pass
over a crossing with his horse and buggy, onto which a
locomotive extended three and a half feet, and under-
took to lead his horse across the railroad track, but
when opposite the locomotive the horse became frighten-
ed and unmanageable and ran and broke the buggy.
This court upheld a judgment in favor of Dr. Alexander
for the breaking of his buggy and depreciation in the
value of his horse, because the railroad was negligent in
parmitting its engine to project onto the crossing
three and a half feet to quote Judge Campbell:

"If the train had been three and a half feet further
back so as to have cleared the crossing, the horse might
have been frightened as it was, but there would have
been no wrong by the appellant and no responsibility
for the accident."

Appellant unnecessarily argues at length our *prima-facie* negligence statute. But a mere reading of appellee's declaration would demonstrate that this suit was not brought under that statute. However, the state of Mississippi, by that statute has declared gasoline to be a "dangerous agency," and draws a wide difference and distinction between a car or engine propelled by the dangerous agency of gasoline and a car propelled by hand.

We note this here because appellant insists on trying to convey the idea to the court by his authorities that this motor car was a hand car. We assume that the cases on which appellant mostly relies are those from which he quotes at length, namely the *McCerrin case,* 72 Miss. 1013, a hand car case, in which there was no evidence of negligence or even anything usual, to quote Judge CAMPBELL: "True, the averment is that these things were all well calculated to frighten very gentle horses, but as the defendant, by its servants, did nothing unusual, and nothing which common prudence would condemn as being calculated to frighten teams passing that way, it is not liable." That is all the court decided in that case, and that about a hand car of which we haven't the slightest criticism to make. The other case quoted at length by appellant is a Kentucky hand car case, where in the court positively stated: "There was not the slighest evidence introduced which tended to prove that the hand car was operated in an unusual way, or that it was making any unusual noise or sounds." Under which circumstances the court held, of course, that there was no liability.

This court has already decided that a railroad company can be guilty of negligence in the operation of a motor car even when such liability was not fixed by statute in the case of *Armstrong* v. *G. & S. I. R. R. Co.,* 115 Miss. 698. Judge COOK said: that the danger to life

and limb of plaintiff was reasonably apparent to any pruden person situated as he was, and, being confronted with this danger, he jumped to save his life." We think the evidence amply supported the theory of plaintiff, and this being true, the court erred in its instruction to the jury." The plainiff was injured by jumping, but; "the car passed through the switch safely, and had the plaintiff remained on the car, he would not have been injured."

In a Michigan case it was held: "In operating a heavy motor car at a rate of fifty or sixty miles per hour, there rested upon a railway the common-law duty to give notice of its approach to a crossing." *Rathbone* v. *Detroit United R.,* 169 N. W. 884. In that case the negligence was such speed and no signal; in this case the negligence was no light at night and no signal.

In a Texas case it was held: "The common law imposes the duty upon the operator of a rapidly moving interurban car along a railroad tract to give timely warning or signals of its approach to a public crossing, so that persons may be apprised thereof, and avoid a collision." *Yoakum* v. *Atchinson T. & S. F. Ry. Co.,* 199 S. W. 263.

In the case before the court, appellant's contention seems to be that it was not negligence for the motor car to have no light or signal, nor was it negligence not to sound a signal on approaching this public crossing. Therefore, according to appellant's theory of this case, if this motor car had killed appellee, Day, on this public highway that night, he being there through appellant's having no light or giving no signal, then appellant would not be liable in damages, because, surely there is no liability where there is no negligence.

It occurs to us that appellant in asking for a reversal in this case, is asking a little too much of this court, when with respect, its position is so palpably and inherently weak.

We respectfully submit that the verdict of the jury and judgment in the circuit court should be affirmed.

SYKES, J., delivered the opinion of the court.

The appellee, plaintiff in the circuit court, recovered a judgment against the appellant railroad company for five hundred dollars as damages for personal injuries, from which judgment this appeal is prosecuted.

The circuit judge instructed the jury peremptorily to return a verdict in favor of the plaintiff, leaving to them the amount of damages to be assessed. The plaintiff was attempting to drive across the tracks of the defendant company on a public road crossing in the town of Rosetta, when his horse became frightened and ran away, overturning the cart and throwing plaintiff to the ground, thereby injuring him. The declaration alleges that the horse was frightened by the sudden approach of a motorcar upon which were riding the section hands of the defendant company. The negligence alleged is the failure to have a headlight on the car, or to sound some signal of its approach to the crossing.

The testimony in the case is somewhat conflicting. The plaintiff himself testified that before driving upon the crossing he looked in the direction from which the car was coming, but could not see the car, because of the darkness, that it was about 6:30 o'clock in the evening of November 5, 1917; that when his horse got upon the main track it became frightened at this car, which was then about forty feet from him; that he saw the car about the time that his horse became frightened; in his opinion the horse was frightened by the car; that he would have seen the headlight of the car, if it had had one, and would not have gone upon the crossing, neither would he have gone on the crossing, had he heard any signal of the approach of the car. It is undisputed that there was no headlight of any kind upon the car, and that no signal of any kind was given by

the car of its approach to the crossing. Another witness for the plaintiff, who was a section hand in the employ of the defendant and was riding upon this car, testified that he saw the plaintiff when he drove upon the crossing; that the motorcar was then about one hundred and eighty feet away. This witness also testified that none of the motorcars used by section crews had headlights.

The section foreman in charge of the car testified as a witness for the defendant. He stated that ordinarily his crew finished the day's work and came into Rosetta about 5:30 o'clock in the afternoon; that on the evening in question his crew was somewhat late, because he had had engine trouble; that it was about 6 o'clock when the accident occurred; that it was not so dark that the plaintiff could not have seen his approaching car; that he saw the plaintiff and his cart; that his motorcar is the usual motorcar used by section crews on railroads in the country; that it was not equipped with a headlight or with a whistle; that he did not need a light, because his work was ordinarily over before dark; that when his attention was called to the plaintiff coming upon the track the horse was running away. It is testified to by all the witnesses, who testified on this point, that the car was running at a rate of speed of not over six miles an hour. The section foreman further testified that he applied the brakes to the car immediately upon seeing that the horse was frightened, and actually stopped the car ninety-nine feet from the crossing.

The only contention of the appellant is that it was error to instruct the jury peremptorily to return a verdict in favor of the appellee (plaintiff). This car was equipped to carry twenty section hands and is the ordinary car used by section crews. It is gradually replacing the old car operated by hand, commonly called the "hand car." The motor is operated by gasoline. There was no violation of any statutory duty in failing to give a signal for the crossing, or in failing to have

a headlight upon the car.   Section 4045, Code of 1906
(section 6669, Hemingway's Code), requiring locomotive
engines to be provided with a bell of at least thirty
pounds weight, or a steam whistle which can be heard
distinctly at a distance of three hundred yards, and re-
quiring the bell to be rung or the whistle to be blown
at a distance of three hundred yards from the crossin,
does not apply to a car of this character.

Since the car did not strike the horse or cart of
plaintiff, section 1985, Code of 1906 (section 1645,
Hemingway's Code), commonly termed the *prima-facie*
negligence statute, has no application.   *Railroad* v. *Kea*,
96 Miss. 195, 50 So. 628.

There was no violation of any statutory. duty on the
part of the operatives of the hand car. The question then
is: Were these operatives guilty of any negligence under
the common law which was the proximate cause of the in-
jury of plaintiff.   Under the conflicting facts in this case
this question was peculiarly one of fact, which should
have been submitted to the jury for decision.   If the
jury believed that it was too dark for the plaintiff to
have seen the hand car approaching the crossing, with-
out any lights and without giving any signal of its
approach, and that because of this darkness a signal
should have been given, or a light displayed, then the
jury would have been warranted in returning a verdict
in favor of the plaintiff.   On the other hand, if they
believed from the testimony that it was not too dark
for the plaintiff to have seen the car, and that the car
was from ninety-nine to one hundred and eighty feet
away from the crossing when the plaintiff drove upon it,
then they could well have found that there was no
negligence on the part of the employees of the defend-
ant.

As stated in the opinion of the court in *McCerrin* v.
*Railway Co.*, 72 Miss. 1013, 18 So. 420:

"But if the defendant, by its servants, did nothing unusual, and nothing which 'common prudence would condemn as being calculated to frighten teams passing that way,' it is not liable. There are many things in the unquestionably lawful operation of a railroad well calculated to frighten very gentle horses, and yet one who suffers from the fright of his horse cannot successfully complain of the loss sustained, unless it appears that the railroad company, by its servants, was guilty of wrong in the matter complained of. . . . The defendant had the right to operate its car in the usual and customary way, and at a safe rate of speed, but had no right to convert it needlessly into a terror inspiring thing, and for such departure from propriety would undoubtedly be liable in damages for any injury caused by this negligence to one free from fault; but rapidity of movement, noises, and sudden appearances are common incidents of the operation of railroads, and one complaining of hurt from these causes must show clearly a departure by the defendant from custom and propriety to warrant recovery. That what is done is well calculated to frighten very gentle horses may consist with the lawful exercise of its rights by the defendant, which must be guilty of some wrong to incur liability."

This is one of those cases which should have been submitted to the jury, the triers of questions of fact, upon the question of negligence.

*Reversed and remanded.*