BRUNT *v.* CHICAGO MILL & LUMBER Co., et al.

No. 42264          April 2, 1962          139 So. 2d 380

608

Ross & Ross, Clarksdale, for appellant.

Brewer, Brewer & Luckett, Clarksdale, for appellees.

Rodgers, J.

This is a suit for property damages, alleged to have been caused by the negligent operation of an airplane. The suit commenced in the County Court of Coahoma County, Mississippi, where T. L. Brunt, the appellant herein, filed a bill of complaint on the equity side of the docket wherein he asked for an attachment against certain lands belonging to the defendant Chicago Mill and Lumber Company. The bill was later amended so as to bring in the pilot of the airplane, Blythe Huntley. The case was tried in the County Court without a jury and the County Court rendered a judgment in favor of the appellant in the sum of $1,600. The defendants then appealed from this judgment to the Chancery Court of Coahoma County, Mississippi, and the Chancery Court reversed the judgment of the County Court and rendered a judgment in favor of defendants. This appeal is taken by appellants from the judgment of the Chancery Court of Coahoma County, Mississippi. The only issue presented in this appeal is whether sufficient proof of

negligence and causation was shown to sustain the Coahoma County Court's finding and award of $1,600 to the appellant, T. L. Brunt.

It appears from the record in this case that T. L. Brunt is a farmer in Coahoma County near Moon Lake and that as a part of his farming operations, Mr. Brunt maintains a cattle pasture on the main line or right of way of the Mississippi River levee near Moon Lake. Mr. Brunt has a contract or lease from the Yazoo-Mississippi Delta Board of Levee Commissioners in which Mr. Brunt was granted the right to construct and maintain needed fences and cattle gaps on the main line levee and to raise and pasture cattle on the levee and right of way and do such acts necessary to protect his interest therein.

It appears that the Chicago Mill and Lumber Company sometimes called Chicago Mill, owned timber interests on land adjacent to the levee right of way where Mr. Brunt maintained his pasture. There is no record showing that the Chicago Mill or Mr. Huntley had the right to land an aircraft anywhere on the main line levee or on the road that runs along the crest of the levee. Mr. Brunt's pasture occupied an area about a mile along the levee and it had fences on both sides so as to keep the cattle in the pasture. He grazed about 102 head of black angus cattle in this levee pasture.

Hal Moore, a forester for Chicago Mill and Lumber Company, was a passenger in an airplane owned and being operated by the defendant Huntley, on a timber inspection flight, on Thanksgiving Day in 1959. It appears that the forester observed a pickup truck near where a woods fire appeared to be burning and he directed the pilot to land so that he could get the tag number of the pickup truck. Mr. Huntley, the pilot, landed the plane in Mr. Brunt's pasture. He flew the full length of the pasture, flying in a southerly direction. Apparently the cattle were not disturbed by the landing

of the plane, but when the plane became airborne in the process of ascending from the pasture it flew over and near the cattle with the motor "at full throttle" and the cattle stampeded.

Mr. Brunt and Mr. Huntley are experienced pilots. Mr. Brunt testified as an experienced pilot and an expert witness that the cattle would stampede from a low-flying airplane. There is no conflict in the testimony that the cattle did stampede, following the "take-off" of the plane, and fifteen head of cattle ran through and broke down a fence, going into an area near the river. Eight of these cattle were lost and they were valued at $200 each, or the total sum of $1,600. The Coahoma County Court heard the testimony introduced in the trial in the County Court and allowed the plaintiff the sum of $1,600 damages for the loss of the cattle. On appeal to the Chancery Court, the court reviewed the evidence and reversed the judgment of the lower court. The Chancellor held that the plaintiff failed to meet the burden imposed by law and to show that the defendants were guilty of negligence. The judge in passing on the motion of the defendants for judgment pointed out that negligence had to be proven, that it was not presumed and the Chancellor was of the opinion that the complainant, T. L. Brunt, did not make the proof necessary to establish his case of negligence against the defendants.

The appellees argue that "the defendant simply lawfully landed an airplane on a public levee. There was nothing negligent in that act, thereafter they simply flew away and so far as plaintiff knows and so testified, this was accomplished by a takeoff which could have been perfect". Mr. Brunt testified that he did not see the plane when it took off until it was airborne and then he heard something and looked back and saw the cattle stampede. He then turned around and went back and found where the cattle had torn the fence down

for a distance of about 50 to 100 yards and had gone through the fence. The witness also saw the tracks of the cattle at the place they went through the fence. On cross-examination Mr. Brunt testified that the cattle were not disturbed when the plane landed and in answer to the question "Why did it stampede them when it took off?" he answered, "Well, you land without power and you takeoff with almost full power." He was asked, "Have you ever seen a plane frighten cattle?" and he said, "Yes, sir," and he was asked "Where?" and he said, "Several places". He was asked the question, "Would you say there was anything unusual about the takeoff? A. I couldn't say, it was airborne when I saw it after it took off, and I didn't see it land." Mr. Brunt testified that he heard the airplane running and that "it sounded like an ordinary airplane, not too much racket but enough to scare my cattle". He testified that his cattle were on the slope and near the fence and that part of the herd was grazing approximately off the crest 20 yards; that his fence was in good condition "best wire steel and creosote post", and that his cattle had never stampeded before. The pilot, Mr. Huntley, testified that he had never landed a plane there before, and that he did not see any cattle there, although he knew that cattle grazed on the levee, "all around and up and down it".

In the early case law on Aeronautics, it was generally recognized that where an aircraft descended on persons or property on the ground beneath, or where objects thrown from the aircraft caused damages, the owner or operator of the offending aircraft was held to the strictest accountability. See The Law of Aviation, 2d ed., by Hotchkiss, page 35. The strict accountability rule was based upon the reason that there was nothing the person on the ground could do to protect himself and property against the aircraft.

The Latin maxim, "Cujus est solum, ejus est usque ad coelum et ad inferos", which has been translated into English as follows: "To whomsoever the soil belongs, he owns also to the sky and to the depths," was restored to as an argument to hold liable an operator of an air vehicle upon the legal theory of trespass. Hinman v. Pacific Air Transport, Same v. United Air Lines Transport Corporation, 84 F. 2d 755. Cf. Rochester Gas & Electric Corp. v. Dunlop, 266 N. Y. S. 469. The earliest aircraft case in the United States applied the strict accountability rule upon the theory that the balloon was a dangerous instrumentality, comparable to a wild beast, fire, or explosives and the like. See Guille v. Swan, 19 Johnson's N. Y. 381. The strict accountability rule was promulgated in the Uniform Law of Aeronautics, and adopted, in whole or in part, by twenty-one states of the United States, but most of these states have enacted laws that varied considerably from the provision of the original absolute liability concept. See The Law of Torts, Harper and James, Vol. 2, Sec. 4, p. 853.

■■ Without unduly prolonging a discussion of the history of Aeronautics case law, we deem it sufficient to say it requires but little reflection to see that the application of ordinary rules of negligence to aviation fixes a greater degree of responsibility. The reason is obvious: the operation of an aircraft in a normal legal manner cannot be classified as negligence per se; nevertheless, the operation of an aircraft does call for a greater degree of care than the operation of an instrumentality which is incapable of inflicting serious injury.

■■ The textwriter points out in 6 Am. Jur., Aviation, Sec. 76, p. 44, that negligence is the basis of the action for injury to persons and property by air vehicles in the following language: "In an action for personal injuries received in an airplane accident, the plaintiff has the burden of proving that the operator

or the aviator was negligent in the operation of the airplane and of showing that such negligence was the proximate cause of the injury complained of.'' We are therefore of the opinion and so hold, that the ordinary rules of negligence are properly applicable to cases of damage to persons and property, caused by aircraft. See The Law of Torts, Harper and James, Vol. 2, Sec. 14:13, p. 845; 6 Am. Jur., Aviation, Sec. 60, p. 36.

The appellee argues that the pilot landed the airplane perfectly and ''took off'', ascending perfectly. The question inferred is: Wherein was he negligent?

The answer to that question must rest in the legal rules or ordinary negligence, together with statutes enacted with reference to aviation law.

Mississippi has adopted certain statutory regulations for the operation of aircraft, under the Code title Aeronautics, and among these laws we find Section 7536-12, as follows: ''It shall be unlawful for any person to operate an aircraft in the air or on the ground or water, while under the influence of intoxicating liquor, narcotics, or other habit-forming drug, or to operate an aircraft in the air or on the ground or water, in a careless or reckless manner so as to endanger the life or property of another. In any proceeding charging careless or reckless operation of aircraft in violation of this section, the court in determining whether the operation was careless or reckless shall consider the *standards* for safe operation of aircraft *prescribed by federal statutes or regulations governing aeronautics.* * * *.'' (Emphasis supplied.) See also U.S.C.A., Title 49, Sec. 1348(c).

The Civil Aeronautics Board has promulgated rules for the safe operation of an aircraft, and among these rules is Section 60:12, as follows: ''No person shall operate an aircraft in a careless or reckless manner so as to endanger the life or property of others.'' Under this rule the board has added the following: ''Note:

Examples of aircraft operations which may endanger the lives or property of others are: (a) Any person who 'buzzes', dives on, or flies in close proximity to a farm, home, any structure, vehicle, vessel, or group of persons on the ground. In rural districts the flight of aircraft at low altitude often causes injury to live-stock. * * *."

The rule of negligence here invoked by the appellant is not that the pilot flew his plane to the ground and ascended in a mechanically negligent manner, but rather that the operator of the airplane, being an experienced licensed pilot, knowing the rule of aviation, should have known and reasonably foreseen, by the exercise of ordinary care and caution of a reasonably prudent and capable airplane pilot, that landing in a pasture, where he saw or should have seen cattle grazing and knowing he would take off downwind under a full throttle, would likely cause the cattle grazing nearby to stampede.

The general rule of law on this subject is as follows: "The probability of injury by one to the legally protected interests of another is the basis for the law's creation of a duty to avoid such injury. Every person is under a duty to exercise his senses and intelligence in his actions in order to avoid injury to others, and where a situation suggests investigation and inspection in order that its dangers may fully appear, the duty to make such investigation and inspection is imposed by law. It is no excuse that one who has created a peril did not intend or expect any injury to result therefrom; every person is held to a knowledge of the natural and probable consequences of his acts." 38 Am. Jur., Negligence, Sec. 24, p. 667. This rule is not unknown nor strange to this jurisdiction. It has often been called to the attention of this Court. See Brewer v. Town of Lucedale, 189 Miss. 374, 198 So. 42; Planters Wholesale Grocery v. Kincade, 210 Miss. 712, 50 So. 2d 578.

Among the early cases reported from our Court we find the case of Burcham v. Robinson, 113 Miss. 527, 74 So. 417, which was an action for injury of a passenger in a mule-drawn buggy against an automobile driver who alleged defendant passed the vehicle at an unreasonable rate of speed. The proof was conflicting. In that case the court reversed a peremptory instruction given for the defendant and said, "* * * the cause, in our judgment, should have been submitted to the jury. The testimony on behalf of the plaintiff tended to prove that the driver, in approaching, saw, or *at least had ample opportunity to discover,* that the mules were frightened and that he did nothing to slack his speed, to turn to the right, or to prevent the injury complained of. * * *". (Emphasis supplied.) The Court said that whether or not the driver was approaching in a reckless manner or could have avoided the injury after having seen that the animals were frightened was a question for the jury. See Mauney v. Gulf Refining Co., et al, 193 Miss. 421, 8 So. 2d 249.

The general rule with reference to damages to cattle caused by fright from low flying airplanes, is set out in 6 Am. Jur., Aviation, Sec. 66, p. 40, as follows: "The flight of aircraft over land at a low altitude, frightening animals and game, attracting spectators and thus injuring crops, and generally inconveniencing the landowner, has been held to render the owner of the planes or other aircraft liable to a judgment for damages, and an injury caused by animals so frightened has been held actionable. * * * there is well-reasoned authority in support of the right of the owner to recover damages under these circumstances."

In the recent case of Bridges v. Texaco, Inc., 242 Miss. 705, 136 So. 2d 595, this Court reversed a judgment on a directed verdict against the appellant in a suit for damages caused by appellee's agents in setting off an explosive charge of dynamite too near appel-

lant's chicken house so as to frighten the chickens and affect egg production, when the appellee knew, or ought to have known that the chickens would be upset and damaged thereby. This Court held that the evidence presented a prima facie case of negligence. This case directs our attention to the case of Yazoo & M. V. R. Co. v. Day, 120 Miss. 296, 82 So. 148, which in turn points out the case of McCerrin v. Alabama & V. R. Co., 72 Miss. 1013, 18 So. 420. In the later case the Court said: "The defendant had the right to operate its cars in the usual and customary way, and at a safe rate of speed, but had no right to convert it needlessly into a terror inspiring thing, and for such departure from propriety would undoubtedly be liable in damages for any injury caused by this negligence to one free from fault; * *''. See Neiswonger v. Goodyear Tire & Rubber Co., 35 F. 2d 761 (1929); Riveer v. Thornton, (Okla. 1949) 210 P. 2d 366; Anno. 69 A. L. R. 320; 83 A. L. R. 336; 99 A. L. R. 175.

The judge of the county court trying the case without a jury rendered a decision in favor of the complainant T. L. Brunt and against both, defendants, in which he held that there was negligence on the part of the defendants and stated: "I think the aircraft landing and taking off caused the cattle to stampede."

██ Negligence may be established by circumstantial evidence where the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inference. See Johnston v. Canton Flying Services, Inc., 209 Miss. 226, 46 So. 2d 533; 38 Am. Jur., Negligence, Sec. 333, p. 1032; Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So. 2d 582; Magnolia Petroleum Co. v. Stinson, 230 Miss. 533, 93 So. 2d 815.

██ The question of whether or not a defendant is guilty of negligence is a question for the jury, or a judge sitting as judge and jury. See Sec. 1455, Miss.

Code 1942. Moreover, we have held that "The question of negligence is one of law for the courts only where the facts are such that all reasonable men must draw the same conclusions from them. A case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish." Long v. Magnolia Hotel Co., 227 Miss. 625, 86 So. 2d 493. See also Arnold v. Reece, 229 Miss. 862, 92 So. 2d 237; City of Greenville v. Laury, 172 Miss. 118, 159 So. 121.

We are therefore of the opinion that the learned chancellor erred in finding that the "plaintiff failed to meet the burden that was imposed on him"; because as shown above, the question of the weight of the evidence is for the trial court.

The appellee, Chicago Mill and Lumber Company, earnestly argues here that in any case the pilot Blythe Huntley operated an air taxi, and was an independent contractor and that the Lumber Company is not liable for his negligence. We do not believe this argument is tenable, however, for the reason the testimony indicates that the pilot was directed by the agent for the Lumber Company to do the very act that caused the cattle to stampede. 27 Am. Jur., Independent Contractors, Sec. 31, p. 510.

In the case of Hays, et al v. Morgan, (Miss. 1955), 221 F. 2d 481, the Court pointed out Section 7536-12, with reference to the careless operation of an airplane and said: "It is the evident intent of the statute to protect the public from any negligence and financial irresponsibility of pilots. It does not say that one on the ground must assume the risk of being hit by an airplane, but that the owner who authorizes the use of his airplane shall be deemed to be engaged in the operation thereof within the meaning of the statutes of Mississippi."

The applicable part of Sec. 7536-26 (9), Miss. Code 1942, is as follows: "Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, *or otherwise*) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning' of the statutes of this state." It is apparent, therefore, the legislature intended that where a person who has the right to direct the activity of an air pilot, and causes him to operate the airplane in a careless and reckless manner, such person is liable for damages which occur as a direct and proximate result of such careless and reckless operation, within the meaning of Sec. 7536-12. See also 6 Am. Jur., Aviation, Sec. 69, p. 41; Anno. 62 A. L. R. 229; 34 A. L. R. 765; Hammond Ranch Corp. v. Dodson, et al, (Ark. 1940) 136 S. W. 2d 484; Canney v. Rochester Agricultural & Mechanical Assn., 76 N. H. 60, 79 A. 517; Roper v. Ulster County Agricultural Society, (N. Y. 1909) 120 N. Y. Supp. 644.

We are of the opinion that the decree entered by the learned Chancellor reversing the judgment of the County Court was erroneous, and should be set aside.

The decree of the Chancery Court will therefore be reversed, and the order of the County Court reinstated, and judgment will be entered here in favor of the appellant against both appellees for the sum of $1,600 with legal interest from the date of the judgment of the County Court.

Reversed and judgment here for appellant.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Jones, JJ.,* concur.