320 So.2d 361 (1975)
CADILLAC CORPORATION, Defendant-Appellant,
v.
C.R. MOORE, Plaintiff-Appellee.
No. 48149.
Supreme Court of Mississippi.
August 18, 1975.
*362 Goldman & Goldman, Thomas W. Goldman, Jr., Dennis Goldman, Meridian, Miss., for defendant-appellant.
Laurel G. Weir, Philadelphia, Barnett & Brooks, Carthage, for plaintiff-appellee.
Before PATTERSON, INZER and WALKER, JJ.
PATTERSON, Justice.
Cadillac Corporation appeals from a judgment of $40,000 obtained against it by C.R. Moore in the Circuit Court of Leake County. The award to C.R. Moore was for injuries to his person and property caused by an explosion in the mobile home he had purchased from Cadillac Corporation. The declaration sought compensation through strict liability in tort or common law negligence. We affirm with suggestion of remittitur.
On September 17, 1970, C.R. Moore purchased a mobile home from Cadillac Corporation, a domestic corporation engaged in the manufacture and sale of such items. Weber Pharis, president of Cadillac Corporation, acted as the salesman of this unit. The home contained a new Duo-Therm heater installed by Cadillac which had purchased it from a reliable furnace manufacturer.
After sale, Cadillac transported the home from Meridian to Leake County and placed it upon the plaintiff's house site. Jimmy Sikes, an employee of Hydratane Gas Company, connected the trailer's Duo-Therm gas heater to its source of fuel, a butane tank located on the premises. After this, Sikes ignited the pilot light and burner. He then advised the plaintiff, who had requested him to make the gas connections, that the heater was not functioning properly because the flame of the burner was too high and the plaintiff should get someone from the seller's concern to check it.
The uncontradicted testimony discloses that on numerous occasions the plaintiff and his wife called the Cadillac Corporation and complained to Pharis that the heater was malfunctioning and importuned him to correct it. Finally, when Pharis would no longer answer their calls, they drove to his office in Meridian and personally advised him the heater did not function properly, relating that the blower would first come on and when the burner ignited, there *363 would be a blaze and rumble of such intensity that it vibrated the whole mobile home.
Shortly thereafter, apparently in response to the last importuning, a serviceman by the name of Carmichael came to the home, adjusted the heater thermostat on the wall and advised the plaintiff the heater was functioning properly, to use it. The plaintiff's wife testified that subsequent to Carmichael's service call the heater continued to malfunction. She repeatedly informed Cadillac Corporation of this trouble and Pharis assured her the heater was safe, to go ahead and use it.
The heater was used in the condition described for the remainder of the winter and early spring of 1972 when, with the coming of warm weather, the pilot light was disengaged.
On October 17, 1972, an employee of Hydratane Gas Company reignited the pilot light at the request of plaintiff's wife. The employee stated the burner did not come on at that time because the weather was too warm for the thermostatic control to activate it. The following day the heater exploded. The explosion and following fire destroyed the mobile home, an adjoining shed and their contents. The plaintiff was injured and escaped the home by wrapping himself in a mattress to avoid the flames in making his exit.
There is no direct evidence as to the cause of the explosion. The testimony adduced by the plaintiff in establishing his case by circumstantial evidence follows:
1. There was no other gas appliance in the home.
2. The heater was constructed to use either natural or LP (liquefied petroleum) gas.
3. Its proper function was dependent upon jets appropriate for the type of fuel consumed.
4. The heater was found after the explosion literally blown "inside out."
Jimmy Sikes, engaged in the gas business and who the trial court concluded was an expert, testified that the jets were too large for the use of propane gas and in his opinion this probably caused the explosion. After the testimony of several intervening witnesses, he was recalled by the plaintiff, and after considerable difficulty by plaintiff's attorney in framing a hypothetical question, Sikes again gave his opinion concerning the explosion:
Q. Answer the question: have I gone over all you'd need to know in order to form an opinion as to what caused the explosion?
A. Yes, sir, I could give an opinion, my opinion on it.
Q. All right, now what would be your opinion?
* * * * * *
A. Well, in my opinion with the furnace doing as it was, more than likely from the extreme heat from the burner burning too high you caused the control of your furnace to malfunction, opening, up, shoot too much gas and too much pressure through whenever it came on; other words, it just let it open up  your thermostat woulda had no control over it.
Cadillac Corporation, the only defendant, disclaimed liability by denying there was any defect in the trailer home it had manufactured and by maintaining it had properly installed the heater. It denied liability by way of defect in the heater, if any there was, since the heater was manufactured by the Coleman Company, a reliable manufacturer, and merely purchased by it for installation.
Appellant denied any negligence arising from its advising the purchasers that the heater was functioning properly and to go ahead and use it, again contending that the responsibility arising from the heater was *364 that of the manufacturer, not a party to the suit, rather than the defendant who installed it.
In support of the last premise Cadillac maintains through the testimony of Elmer Sharp, its manager, that when the home was delivered to the purchaser, there was attached to the heater a yellow tag advising "if anything was wrong with it go get in touch with Mr. Harold Carmichael in Meridian and showed him his phone number down at the bottom of the yellow tag." Sharp, the only defense witness, also testified that he did not know who paid Carmichael for his visit to plaintiff's home to repair the heater.
The issue, according to Cadillac, is whether it exercised ordinary care in making an inspection of the furnace and in making repairs and advising the purchaser of its safety for use. It insists that a decision should rest on "(1) the relationship that existed between the appellant, as installer of the furnace, Duo-Therm, as manufacturer of the furnace, and Harold Carmichael, Inc., the company performing service work for the manufacturer and in particular, work on the furnace in question, along with (2) the specific actions taken by appellant." From these premises the appellant first argues that products liability, strict liability in tort, does not apply in this case. We agree, if for no other reason the plaintiff did not obtain any instruction under this theory.
The only instructions on strict liability submitted to the jury were those requested by the defendant which correctly set forth, as we view them, its theory of defense to strict liability in tort. While there can be no doubt that State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966), holds that a suit for strict liability in tort is not exclusive and permits liability upon the alternative ground of negligence, where it can be proved; nevertheless, the first alternative was not pursued nor submitted to the jury on a strict liability theory, but rather on one of negligence. Compare Hamilton Fixture Co., Inc. v. Anderson, 285 So.2d 744 (Miss. 1973). The issue of strict liability, though argued by the appellant, is not before us.
The assertions for reversal under (2), the specific actions taken by the appellant, are that the verdict is against the overwhelming weight of the evidence. This point necessitates a weighing of the evidence. The record establishes without contradiction that the defendant sold the mobile home to the plaintiff for a considerable sum and delivered it to his house site. Assuming, as we do, there was no defect in the manufacture of the heater, there nevertheless remains the testimony that the plaintiff advised the president of the defendant corporation shortly after his purchase that the heating unit was malfunctioning, detailing its aberrations, and "he said there was nothing wrong with the trailer, nothing wrong with the furnace and he turned around and walked away and wouldn't talk to me."
The evidence is also uncontradicted that other calls were made by the plaintiff to Pharis concerning the heater and that Harold Carmichael appeared thereafter to repair it and that he was not contacted or compensated for this service by the plaintiff.
These circumstances permit, in our opinion, only one conclusion, and that is Carmichael made the service call at the direction of the defendant and was therefore its servant and agent on the occasion. Moreover, after Carmichael's repairs, the heater continued to malfunction, prompting additional calls to Pharis which gained only his assurance that the heater was safe and to go ahead and use it.
We conclude these factors established a vendor/purchaser relationship between the parties of some significance. It was sufficient for the defendant to warrant the mobile home to the purchaser for one year *365 and to dispatch its agent to repair the heater within this period. More importantly, it was great enough for the defendant to thereafter give its assurance to the plaintiff that the heater was safe for use.
In our opinion the relationship was sufficient in law to impose upon the defendant a duty of reasonable inspection and repair to the property sold by it in order to supply the heater in a condition safe for its intended use. J.C. Penney Co. v. Morris, 173 Miss. 710, 163 So. 124 (1935), and D'Antoni v. Albritton, 156 Miss. 758, 126 So. 836 (1930). We further conclude that the duty imposed by law could not be cast aside or terminated by the mere assertion that the heater was manufactured by another.
In J.C. Penney Co., supra, we applied the rule that a vendor of a chattel made by a third person which is bought as safe for use in reliance upon the vendor's profession of competence and care is subject to liability for bodily harm caused by the vendor's failure to exercise reasonable competence and care to supply the chattel in a condition safe for use. See also Pate Auto Co. v. Westbrook Elevator Co., 142 Miss. 419, 107 So. 552 (1926).
The cases of McManus v. Temple, 195 So.2d 830 (Miss. 1967), Federal Compress & Warehouse Co. v. Swilley, 252 Miss. 103, 171 So.2d 333 (1965), and D'Antoni v. Albritton, 156 Miss. 758, 126 So. 836 (1930), though considering questions of negligence growing out of business relations other than vendor/purchaser, nevertheless announced a principle which coincides with the duty imposed upon a vendor of property. Each states that the act imposing liability must be of such character, by way of commission or omission, that the actor should reasonably anticipate that some injury to another will probably result therefrom. The rule might be stated differently, that fault on the part of a defendant so as to render him liable is to be found in action or nonaction, accompanied by knowledge, actual or implied, of the probable result of his conduct. This theory is stated in Prosser, Law of Torts, section 95, page 632 (4th Ed. 1971) as follows:
The seller's negligence may take a number of forms. It may consist of a misrepresentation of the character of the goods, or of their fitness for a particular use. It may consist of a failure to disclose to the buyer facts of which the seller has knowledge which make the goods dangerous for the buyer's purpose... . [Citing J.C. Penney Co., supra.]
Restatement (Second) of Torts, section 401 (1965), points out that a vendor of a chattel manufactured by a third person who knows or has reason to know that the chattel is, or is likely to be, dangerous when used by a person to whom it is delivered, is subject to liability for bodily harm caused thereby if he fails to exercise reasonable care to inform him of the likelihood of danger or to otherwise protect him against it.
In applying these principles to this case we again note that the defendant sold the mobile home containing the heater to the plaintiff. The defendant knew, or should have known, that the heater was constructed to burn either liquid petroleum or natural gas. It also knew, or should have known, that it was unsafe for its intended purpose unless the proper jets were installed for the type of fuel used. It had knowledge by direct communication from the plaintiff that the heater was not functioning properly and undertook its repair through its agent Carmichael. Unfortunately, the repair extended only to a thermostat and did not include an inspection of the heating unit. Whether the agent was advised of the details of the heater's performance and overlooked checking the *366 heater, or whether Pharis neglected to advise him of its unusual functioning, the burner igniting with such force that it vibrated the home, is of no moment since either was, or both were, negligence. The details of the heater's performance which were related to Pharis, the president of defendant corporation, were surely indicative of the presence of excessive gas at the time of ignition of the burner and should have alerted the defendant as a reasonable manufacturer and vendor that an inspection of the heater was necessary for its proper performance and the safety of the plaintiff and property. Carmichael's failure to inspect, which undoubtedly would have led to the right choice of installing proper jets, was compounded thereafter by the defendant when it was notified that the heater had not been repaired and plaintiff was assured by Pharis that it was safe for use when he knew, or should have known, that its continued operation was inherently dangerous.
We are of the opinion the jury did not err in finding from the sufficiency of evidence that the actions of the appellant were negligent and were the proximate cause of the plaintiff's injuries. Although it is true, as defendant asserts, that the plaintiff did not directly prove the precise cause of the explosion, it is likewise true that negligence may be proved by circumstantial evidence where the circumstances are such as to remove the case from the realm of conjecture and place it within the field of legitimate inference. Brunt v. Chicago Mill & Lbr. Co., 243 Miss. 607, 139 So.2d 380 (1962), and the cases therein cited. The method of establishing fact which is dictated by available evidence, once accomplished, has no significance for reversing a case.
It is next contended that the court erred in granting plaintiff's Instructions Nos. 6 and 9, which we do not portray for brevity. These instructions are inarticulately drawn and certainly No. 9 is verbose and to a degree confusing, but when considered with the other instructions, we are unable to say that they contained error of such proportion that the cause should be reversed.
The appellant argues that the court erred in permitting Sikes to testify from an improper hypothetical question propounded by the plaintiff over the objection of the defendant. We have hereinabove observed that the hypothetical question was posed after considerable difficulty by the plaintiff's attorney in framing it. However, the lower court has much discretion in permitting or rejecting a hypothetical question, particularly as to whether it encompasses the facts put in evidence by the witnesses. We are unable to conclude that the court abused its discretion in permitting Sikes, the expert, to state his opinion as to the cause of the explosion. Providence Washington Ins. Co. v. Weaver, 242 Miss. 141, 133 So.2d 635 (1961). Moreover, this witness had been previously interrogated as to the cause of the explosion and had given his answer without objection of the defendant, diminishing, we think, the effect of the appellant's argument that the hypothetical was improper.
The appellant's argument that the damages are excessive has caused us much concern. An award for the purchase money of the trailer home is not before us, having been withdrawn by an amendment to the declaration. Our concern is that the plaintiff's evidence directed to his loss of income is inadequate, confusing and unsupported by any record of the appellee's business of chicken production. The difficulty arises from the plaintiff's general evidence that "before the fire I made around fourteen, anywhere from fourteen, fifteen thousand dollars," which he later qualified by stating that the chicken business was in his wife's name and that she earned the money from it with his aid. His assistance *367 was then qualified by his testimony that he was disabled much of the time that the loss of income purportedly occurred. The last statement was again qualified by the plaintiff's statement that he supposed he and his wife "carry fifty-fifty load" of the business. He then conjectured, as we view it, "and then this past year, when chickens went up we would have made  cleared  say, $4,000 instead of the $2,000, and this year it has also gone higher." Following this surmise the plaintiff conjectured that since the explosion and due to his physical injury he had lost standing with the company for whom he produced chickens and in this posture it was difficult for him to obtain another contract, and this augmented loss of income.
These comments are made to point out the lack of evidence, or the confusion therein, as to the plaintiff's loss of income, yet throughout the testimony there is a reference to a loss of $12,000, $13,000 or $14,000 a year which we believe was likely to have improperly influenced the jury in reaching its verdict of $40,000.
The record reflects sufficient evidence to support a verdict for pain and suffering and for the loss of household and other personal property. In the aggregate, however, and conceding the difficulty in measuring pain and suffering, we conclude from a review of many of our cases on damages that this judgment should be reduced in the sum of $10,000, and a remittitur in that amount is hereby offered the plaintiff. If he accepts the option of remittitur, the case will be affirmed for $30,000, or if he rejects, then it will be affirmed on liability and reversed and remanded for another trial on damages only.
Affirmed with remittitur.
GILLESPIE, C.J., RODGERS, P.J., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.