425 So.2d 1036 (1983)
Clayton W. CARLETON
v.
STATE of Mississippi.
No. 53481.
Supreme Court of Mississippi.
January 14, 1983.
*1037 Wittman & Berry, Thomas D. Berry, Jr., Gulfport, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
WALKER, Presiding Justice, for the Court:
The appellant, Clayton W. Carleton, was convicted of murder in the Circuit Court of the First Judicial District of Harrison County and sentenced to a term of life in the custody of the Mississippi Department of Corrections. From that judgment and sentence, Carleton appeals. We affirm.
On July 21, 1980, at approximately 8:30 in the evening, the deceased, Jack Newton Myers, was helping two friends, James H. Vincent and Rayford "Pee Wee" Hosford, put a bilge switch on Hosford's boat which was docked at the small craft harbor in Gulfport. At this same time, some distance away, two young girls, one, fourteen, and one, sixteen years of age, were talking to three boys who were sitting on an automobile, one of whom was identified as Carleton. Carleton had a pistol "waving it around." He told the girls that the gun was not loaded and let one of them hold it. Carleton offered the girls a beer, which they accepted. He also offered them a quaalude, a form of dope, which they declined and he asked them if they wanted to "get laid," which they also declined. One of the boys asked if they wanted to steal a boat and go for a ride. Upon declining to be "laid," one of the boys with Carleton told the girls to "get on down the road" and started chasing them past the point where Myers and his friends were working on the boat.
The victim, Jack Myers, Vincent and Hosford heard the two young girls "coming down the street running, and there was two *1038 boys, men, behind them, using profane language."
The appellant was not one of the men chasing the girls. Myers raised up and said, "you all ought not to use that kind of language amongst young girls." The two young men then went back and got in a Riveria Buick automobile and drove toward the cafe at the end of the harbor. In approximately ten minutes, after Myers, Vincent and Hosford finished putting on the switch and walked to the entrance to Pier No. 2 of the harbor, a Riveria Buick automobile pulled up and parked across the street. Carleton and two other men got out and walked toward Myers and Vincent. Vincent, a witness for the State, described what then happened:
They walked over, and one nudged me off where I was leaning up against a little pier, nudged me over to the step and I stepped one step down, and the other one said [to Jack Myers] "you are the son-of-a-bitch with the big balls", and about the time he said "balls", he turned around like that and said "B-a-a-m", and turned and looked at me and cocked the gun and throwed it over on me, and I fell over on the platform and covered up, and heard another racket and Pee Wee was down and I looked and he had it on Pee Wee. He didn't shoot, and turned around, didn't run, but in a fast trot, trotted back to the car, and the car sped off, and he got down the street about, I would say, a hundred and fifty yards and cut the headlights out, and that's the last I see of him.
Vincent further testified that Jack Myers fell after being shot and was gasping for breath and that Carleton was the person who shot him. Myers was dead when the medics arrived.
The two young girls, Vincent, Hosford and one David Cooper testified on behalf of the State with regard to the barbaric, cruel and unnecessary killing.
The appellant's primary defense was insanity. However, by their verdict, the jury found him to be sane.
On appeal, Carleton makes several assignments of error. However, the evidence of the appellant's guilt in this case is so strong that absent his being insane, which the jury rejected, any argument to the contrary defies logic or reason.

PROPOSITION NO. 1
The appellant first contends that the lower court erred in failing to grant a mistrial when the district attorney told the jury during closing argument that appellant had a man take the gun in question apart in a backroom.
During final argument the attorney for appellant told the jury that the expert for the State had not torn the gun down to examine it. In response to this statement the district attorney, in his closing argument, told the jury that the gun had been taken apart "right back there in that room." Whether true or not, the district attorney went outside of the record in making the statement. An objection was interposed which was sustained and a motion for a mistrial was overruled. However, the court instructed the jury to disregard the statement and we can only assume that they abided by his instructions. In any event, we are of the opinion that the statement could not have had any effect on the ultimate verdict of the jury.

PROPOSITION NO. 2
The appellant contends that the court erred in allowing the district attorney to make prejudicial remarks to the jury.
(a) The appellant first contends that any reference to the fact that the two young children and wife of the deceased would be having birthdays without their daddy and husband "because of the dastardly act of a dope peddler on the way from Florida who stops in Gulfport, Mississippi, and decides to take a man's life," was highly inflammatory and there was no evidence that Carleton was a dope peddler. The objection was overruled by the court.
The appellant now contends that the prosecuting attorney went outside of the record in stating that the appellant was a dope peddler and committed error by bringing in evidence of another crime.
*1039 An examination of this record reveals that the district attorney did not go outside of the record in mentioning that appellant was a dope peddler. Both the doctor offered by the appellant and the doctor offered by the State on the question of whether appellant was sane or insane testified that appellant had said that he had gone to Florida to purchase drugs and was unable to get all that he wanted. The doctor for the State further testified that Carleton told him that he had put up $2,000.00 of his money for drugs in Florida and had purchased 800 quaaludes to bring back to Louisiana. In our opinion, the purchase of such a large quantity of drugs certainly raises a reasonable inference that they are purchased for resale. Therefore, the appellant's contention is without merit.
(b) The appellant next contends that "The Jury is told [by the district attorney] that the attorney that represents Appellant is a flim-flam artist, the conditions of the penitentiary are excellent with air conditioned buildings and that attorney had been furnished Appellant at no cost to Appellant." Appellant concedes that objections to these remarks were sustained but asserts that they had already done damage which could not be removed. First, the district attorney did not refer to the appellant as a "flim-flam" artist, but said that the defense presented was a "flim-flam defense." It is true that the district attorney stated that Mr. Berry had been doing that ever since he had been practicing law, and when the two are read together it might be said that the district attorney was calling Mr. Berry a "flim-flam artist." However, as stated earlier, the trial court sustained the objection to this statement and there was no request that the court instruct the jury to disregard it. Further, in all fairness to the district attorney, Mr. Berry had earlier questioned his prosecutorial ability by calling this case the case of the "refried beans," adding that the reason that the Mexicans cook refried beans is that "... they can't do anything right the first time. And that's what we are talking about here, because this is the second time this case has been tried." We do not condone this type of argument by the attorneys on either side. However, any former trial judge knows that the zeal of advocacy by counsel on both sides invariably leads to exchanges of this sort. When the exchanges get out of hand, the trial judges have the authority to and should impose appropriate sanctions. The remarks of this case, in our opinion, were not reversible error.
(c) The appellant next complains about the following statement made by the district attorney in closing argument. "... I think when you go back [in the jury room] ... you are going to find that this can be nothing but murder. You know, we have got to let people know what the people of Harrison County stand for."
Objection was interposed, which was overruled by the court and the district attorney continued. "They stand for honesty, justice and equality, and tell all the Clayton W. Carleton's `I don't care where you come from.'"
We have carefully examined the record with regard to the above statement and find nothing improper about it and are of the opinion that the trial court properly overruled the appellant's objection to the statement.

PROPOSITION NO. 3
The appellant contends that the court erred in permitting witness, David A. Cooper, to testify.
The Court has examined the record with regard to this assignment of error and find it to be without merit. David A. Cooper's name was listed on the back of the indictment as a prospective witness, his name was furnished during the first trial as a prospective witness and appellant's attorney was given an opportunity to interview the witness prior to the present trial. After conducting a hearing on the question of whether the witness Cooper could testify, the trial court ruled as follows: "It would not be prejudicial in the mind of the court to allow this defendant [sic-witness] to testify when you balance the rights of society and the defendant, given the fact that Mr. *1040 Berry [counsel for appellant] did interview the witness." Furthermore, appellant produced no evidence on his motion for a new trial that he had been harmed or prejudiced by not having earlier notice that Cooper would testify. Therefore, that assignment of error is without merit.

PROPOSITION NO. 4
The appellant contends that the court erred in overruling appellant's motion to quash and exclude the jury panel and in limiting the defense to inquire on voir dire as to what the jurors had read or heard from the news media.
We have carefully considered this assignment of error and are of the opinion that no reversible error occurred. The record is skimpy with reference to the questions which counsel for the appellant would have asked and we are left to pure conjecture and surmise as to what the full extent of the questions would have been.
We stated in Jones v. State, 381 So.2d 983 (Miss. 1980) that "The trial court has broad discretion in passing upon the extent and propriety of questions addressed to prospective jurors... . Although broad, the discretion is not unlimited, and an abuse will be found on appeal where clear prejudice to the accused results from undue constraint on the defense... ."
We are unable to determine from this record that prejudice resulted to the accused as a result of the court's rulings on objections during voir dire.

PROPOSITION NO. 5
The appellant next contends that "The lower court erred in allowing the district attorney over the objection of the appellant, to frame his hypothetical to the psychiatrist, Dr. Maggio, and to question the psychologist, Dr. Yarnell, on matters outside the evidence."
In this regard, the appellant contends that there was no evidence that the appellant hid the gun which was found buried by a telephone pole in Louisiana or that he cannabalized his car by taking the vehicle identification off and other serial numbers as well as stripping it of a door, tires off the rear, and its transmission.
It was the State's theory that the appellant buried the gun by the telephone pole and stripped his automobile in an effort to avoid detection and being apprehended. In our opinion this was a reasonable inference to be gathered from the evidence. Facts which are not supported by direct testimony, but which are readily inferable from the evidence, may be embodied in a hypothetical question to an expert witness. Rational inferences may be drawn from the record to form the basis for the question. The interrogator may form his question upon any theory which can reasonably be deduced from the evidence. Thus, a hypothetical question may properly include as a fact that which may reasonably be inferred from the direct and circumstantial evidence. State ex rel. Richardson v. Edgeworth, 214 So.2d 579 (Miss. 1968); McCormick on Evidence, § 14 (1954); 2 Wigmore on Evidence, § 682 at 805 (3d ed. 1940); see Prewitt v. State, 106 Miss. 82, 63 So. 330, 6 A.L.R. 1476 (1913).
In Chapman v. Carlson, 240 So.2d 263 (Miss. 1970), quoting from Am.Jur., "... The interrogator may frame his question on any theory which can reasonably be deduced from the evidence and select as a predicate therefor such facts as the evidence proves or reasonably tends to establish or justify."
It is the duty of the trial court to control the propounding of hypothetical questions and the method of testifying by expert witnesses. It exercises a judicial discretion which ought not to be overridden, unless it very clearly appears to have been wrongfully exercised. Providence Washington Ins. Co. v. Weaver, 242 Miss. 141, 133 So.2d 635 (1961); See Cadillac Corporation v. Moore, 320 So.2d 361 (Miss. 1975).
For the above reasons, this assignment of error is without merit.

PROPOSITION NO. 6
The appellant contends that the lower court erred in granting Instruction S-4 which told the jury:

*1041 The Court instructs the jury that malice aforethought mentioned in the indictment in this case may be presumed from the unlawful and deliberate use of a deadly weapon.
This Court has held in a number of cases that the granting of this instruction was reversible error. See Hendrieth v. State, 230 So.2d 217 (Miss. 1970); Blackwell v. State, 257 So.2d 855 (Miss. 1972); and cases cited therein. However, each case must stand on its own facts in determining whether a particular error constitutes reversible error. In this case, absent the appellant being insane, which defense was rejected by the jury, where Carleton cold-bloodedly, needlessly, without provocation, and without any justification walked up to Jack Myers and shot him with a .44 caliber magnum pistol, killing him instantly.
In our opinion, the court's error in granting the above instruction was harmless beyond a reasonable doubt and could have had no effect on the verdict of a fair-minded jury.
We have carefully considered the remaining assignments of error and find them to be wholly without merit.
The judgment and sentence of the trial court sentencing Carleton to life in prison are affirmed.
AFFIRMED.
PATTERSON, C.J., SUGG, P.J., and ROY NOBLE LEE, BOWLING and PRATHER, JJ., concur.
HAWKINS, BROOM and DAN M. LEE, JJ., dissent.
HAWKINS, Justice, dissenting:
In deference I am compelled to dissent.
In my view it was reversible error to grant instruction S-4 for the State:
The Court instructs the jury that malice aforethought mentioned in the indictment in this case may be presumed from the unlawful and deliberate use of a deadly weapon.
This instruction is only proper when the accused is the only witness to a homicide, and the State can only prove two things: (1) the defendant killed a human being with (2) a deadly weapon. In such a case it is up to the defendant to come forward with the circumstances justifying the slaying. If he fails to do so, the State is entitled to this instruction. In McDaniel v. State, 16 Miss. (8 S. & M.) 401 (1847), we stated:
When the fact of killing, with all its attendant circumstances, is clearly proved, and the testimony either shows express malice, or that there was no malice at all, there is no room for presumption. But in cases where the killing is proved, and no accompanying circumstances appear in the evidence, the law presumes the killing was done maliciously.
Id. at 417.
In this case four eyewitnesses testified to the slaying. Two of them were in a position to observe and testify as to all the facts and circumstances surrounding the slaying. Furthermore, the defendant pleaded insanity. This instruction could only have had the effect of bolstering the State's case and it was reversible error to give it.[1]See Blackwell v. State, 257 So.2d 855 (Miss. 1972); Stewart v. State, 226 So.2d 911 (Miss. 1969); Chinn v. State, 210 So.2d 666 (Miss. 1968); Hydrick v. State, 246 Miss. 448, 150 So.2d 423 (1963); Funches v. State, 246 Miss. 214, 148 So.2d 710 (1963); Shields v. State, 244 Miss. 543, 144 So.2d 786 (1962); and Johnson v. State, 223 Miss. 167, 77 So.2d 824 (1955).
I note in this case that defense counsel strenuously objected to this instruction, and informed the court it would almost surely lead to reversal.
Once again I perceive a disconcerting tendency to ignore historical precedent wherein we either affirm upon an erroneous instruction granted the State, or the refusal to give a perfectly proper instruction requested by the accused, which in previous *1042 cases have been held to constitute reversible error.
Here, at least, the majority acknowledges the granting of this instruction was error, but justifies affirmance under the rubric "harmless" error "beyond a reasonable doubt."
To ignore well settled, salutary principles of law in one case can only exponentially exacerbate the problem for later cases and future members of this Court.
As noted in the majority opinion, other errors occurred in this trial, especially the statement by the district attorney that defense counsel knew the mechanics of the pistol. This statement should not recur upon re-trial, however, and does not reach the magnitude of the erroneous instruction granted the State.
I would reverse and remand.
BROOM, J. and DAN M. LEE, JJ., join this dissent.
NOTES
[1] "Malice aforethought," of course, means a preconceived evil intent or design, which is contrary to a defense of insanity or culpable negligence.